IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JIN NAKAMURA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-4029-DDC-GEB |
| | ) | |
| WELLS FARGO BANK, NATIONAL | ) | |
| ASSOCIATION, d/b/a/ WELLS   FARGO | ) | |
| DEALER SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion and Memorandum in Support of Order for Corrective Notice to be Issued to Putative Class Members (**ECF No. 67**).  The Court has considered Plaintiff's motion and memorandum, Defendant Wells Fargo Bank, N.A., d/b/a/ Wells Fargo Dealer Services, Inc.'s ("Wells Fargo") opposition brief (ECF No. 83), the Affidavits (ECF Nos. 93-94), and oral arguments from the February 2, 2018 hearing.  For the reasons set forth below, Plaintiff's motion is **DENIED**.[1]

### I.    Background

This putative class action stems from allegations surrounding Wells Fargo's repossession of 1,150 servicemembers' vehicles without court orders in violation of

---

[1]However, as discussed in the Conclusion, *infra*, should Plaintiff meet the necessary elements for class certification, the certification notice shall state the Court will entertain applications to void any releases obtained by Wells Fargo between August 31, 2017 and November 15, 2017.

Section 3952(a) of the Servicemembers Civil Relief Act between the time period of January 2006 through October 4, 2016 ("SCRA").  (ECF No. 20, ¶¶ 76-86; ECF No. 83-8, Ex. A).[2] In the fall of 2016, Wells Fargo entered two consent orders with two governmental agencies pledging to remedy this SCRA violation.  Part of this remedy includes sending settlement offers to affected servicemembers in exchange for the return of signed releases, approved by the Department of Justice ("DOJ"), absolving Wells Fargo of future SCRA liability. Between August 31, 2017 and November 10, 2017, Wells Fargo sent settlement offers to servicemembers without any mention of the existence of this lawsuit as a potential class action.  Having discovered its omission, in mid-November of 2017, Wells Fargo revised its letters to include details on the class action allegations, and allowed servicemembers who signed releases the option to rescind the release, keep the settlement money, and be a part of the class action, if certified.   Plaintiff asks this Court, pursuant to its power under Fed. R. Civ. P. 23(d), to invalidate all releases obtained during the period of August 31, 2017 to November 15, 2017 and to order Wells Fargo to issue corrective notices.

### A.     Consent Orders and Remediation Obligations

On September 29, 2016, Wells Fargo entered into a consent order with the Comptroller of the Currency of the United States of America ("OCC Consent Order"), relating not only to the SCRA repossession violations, but also to Wells Fargo's failure to

---

[2]Because many of the documents referenced herein are sealed, the Court will refer to them by ECF number.  Because of public interest in judicial opinions, this Memorandum and Order will not be filed under seal.

comply with other SCRA laws.  (ECF No. 83-5, Article I, ¶¶ 1-3).[3]  The OCC Consent Order covered a period from 2006 to 2016.  (*Id*.).  On October 4, 2016, a different consent order, one entered between Wells Fargo and the DOJ ("DOJ Consent Order"), became effective, and so remains until April 4, 2019.  (ECF No. 83-4, p. 23).  The DOJ Consent Order concerned Wells Fargo's repossession of SCRA-protected servicemembers' vehicles without court orders from January 1, 2008 through July 1, 2015.  (*Id*. at ¶ 1).[4]

Both Consent Orders require Wells Fargo to remedy the SCRA violations. (ECF No. 83-4, ¶¶ 8-36; ECF No. 83-5, Articles III-V).  As relevant here, Wells Fargo is required to remediate all SCRA-protected customers whose vehicles were repossessed without a court order from January 1, 2006 (look-back period for the OCC Consent Order) through October 4, 2016, the effective date of the DOJ Consent Order. (ECF No. 83-3, ¶ 5; ECF No. 83-5, Article V(1) and (2)(a), (d); ECF No. 83-4, ¶¶ 19-21).  Also, while the DOJ Consent Order is effective, Wells Fargo is to remedy any additional non-compliant SCRA repossession accounts it finds.  (ECF No. 83-4, ¶¶ 19, 45).

Of interest here, the Consent Orders require Wells Fargo to:  (1) offer affected servicemembers $10,000 in compensation, plus lost equity in the repossessed vehicle and interest accrued on that lost equity, and develop a "Remediation Plan" to administer this compensation (ECF No. 83-4, ¶¶ 22, 24; ECF No. 83-5, Article V); (2) delete the tradelines for the affected accounts (ECF No. 83-4, ¶ 32; ECF No. 83-5, Article V(4)(d)(i)); (3)

---

[3]Wells Fargo neither admits or denies the SCRA violations discussed in the OCC Consent Order. (ECF No. 83-5, Article 1).
[4]Wells Fargo neither admits or denies the SCRA violations discussed in the DOJ Consent Order. (ECF No. 83-4, ¶ 6).

provide a "cost-free means for affected servicemembers to contact it, including . . . a toll-free telephone number" (ECF No. 83-4, ¶ 25); and (4) internally audit and validate its compliance with the Consent Orders. (ECF No. 83-2, 103:4-9; ECF No. 83-3, ¶ 12; ECF No. 83-5, Article II(2)).

In addition, the DOJ Consent Order sets forth several requirements governing the content, timing, and manner of Wells Fargo's communications with affected servicemembers regarding the compensation offers. (ECF No. 83-4, Article V). Specifically, the communications are required to be in letter form, provided to the DOJ for review and approval, and accompanied by the approved release. (*Id*. at ¶ 26). Wells Fargo is then required to mail up to a total of four letters to each affected servicemember, referred to by Wells Fargo as the Initial Letter, Second Notice, Third Notice, and Final Notice. (ECF No. 83-3, ¶ 9). Finally, within 21 calendar days of receiving a signed release, Wells Fargo is to mail out the remediation check. (ECF No. 83-4, ¶ 27).

The DOJ identified 413 repossessions between January 1, 2008 and July 1, 2015 not in compliance with the SCRA. (ECF No. 83-4, ¶ 20). Wells Fargo later identified another 150 violations between January 1, 2006 (the OCC Consent Order's lookback period) and October 4, 2016 (DOJ Consent Order's effective date), for an initial total of 563 repossessions ("Initial Population"). (ECF No. 83-3, ¶ 8; ECF No. 83-8, Ex. A).

Then, sometime between June and August 31, 2017, after this lawsuit was filed, and the class action allegations made, Wells Fargo identified another 587 non-compliant repossession accounts ("Additional Population"). Wells Fargo began sending out settlement letters to these servicemembers pursuant to its obligations under the Consent

Orders, but without any mention of the possible class action.  (ECF No. 83-3, ¶¶ 13-18, 21; ECF No. 83-4, ¶ 19).  Wells Fargo's communications to this Additional Population is the subject of concern.

A discussion of how Wells Fargo discovered these 587 additional accounts is therefore relevant.  The Consent Orders require Wells Fargo, on a continuing basis, to internally audit and validate compliance with its remediation obligations, including identifying all repossessions potentially subject to remediation.  (ECF No. 83-3, ¶ 12; ECF No. 83-2, 103:4-16).  In June of 2017, while complying with the DOJ audit requirements, Wells Fargo identified additional auto finance loans, which predated its acquisition of Wachovia in 2008.  (ECF No. 83-3, ¶ 13; ECF No. 83, pp. 6-7, n.2).  These additional loans were not part of the Initial Population review described above because they had not been converted following the merger.  (*Id.*).  Wells Fargo, sometime between June of 2017 and August 31, 2017, reviewed these additional repossession accounts and discovered that 587 were subject to remediation under the Consent Orders.  (*Id.* at ¶¶ 13-16).  This brings the total repossessions to 1,150.  (ECF No. 83-8, Ex. A).

B.    **Procedural History**

On April 10, 2017, Plaintiff filed his initial Complaint against Wells Fargo alleging (1) violations of the SCRA; (2) violations of the Utah Consumer Sales Practices Act; and (3) conversion.  (ECF No. 1, ¶¶ 50-71).  On June 20, 2017, Wells Fargo filed an Amended Answer generally denying the allegations.  (ECF No. 10).  On July 9, 2017, Plaintiff moved for leave to amend to add class action allegations.  (ECF No. 14).  The Court held a Scheduling Conference on July 12, 2017 where it ordered the parties to exchange initial

disclosures, but delayed entering a Scheduling Order until Plaintiff's motion for leave to amend was ruled on.  (ECF No. 15).

On July 20, 2017, Wells Fargo opposed the motion for leave to amend arguing the class size was shrinking due to settlements being obtained under the DOJ Consent Order. (ECF No. 16, p. 1).  However, on August 31, 2017, Wells Fargo withdrew its objection after having identified the Additional Population discussed above, and because these servicemembers would be potential class members. (ECF No. 18, p. 1).  Wells Fargo, unknown to the Court or Plaintiff, began sending out settlement letters to the Additional Population (*i.e.*, putative class members) on this date as well.  (ECF No. 83-3, ¶ 17).

This Court granted Plaintiff's motion for leave to amend on September 1, 2017 (ECF No. 19), and Plaintiff filed his First Amended Class Action Complaint ("Class Action Complaint") on September 15, 2017 (ECF No. 20).  The Court held a Scheduling Conference and entered a Scheduling Order on October 6, 2017.  (ECF No. 28).  Wells Fargo answered the Class Action Complaint on October 13, 2017.  (ECF No. 30).

After several court conferences with the parties regarding the varied intervals of the issuance of the letters and releases, and the content, or lack thereof, of the communications to the putative class, Plaintiff motioned the court to invalidate the releases.  (ECF Nos. 33, 43, 57, 67, 69).

### C.    Wells Fargo's Letter Campaign

Between August 31, 2017 and November 10, 2017, Wells Fargo mailed out hundreds of letters and releases (consisting of Initial Letters, Second Notices, Third

Notices, and Final Notices) to the Additional Population without any mention of the class action allegations. (ECF No. 83-3, ¶¶ 17-20).

In mid-November, however, Wells Fargo revised these letters to include details about the alleged class action, including, among other things, Plaintiff's counsel's contact information and a Wells Fargo-controlled toll-free number to call in case of questions. (ECF No. 83-3, ¶¶ 22, 24; ECF No. 67-8; ECF No. 67-9; ECF No. 67-11).

Additionally, for servicemembers who already accepted payments and signed releases in response to letters without the alleged class action details, Wells Fargo prepared a Supplemental Letter. (ECF No. 83-3, ¶ 23). In addition to the above details, the Supplemental Letters provide options on proceeding if the servicemember (i) had not signed a release and wished to be a part of the proposed class action; (ii) had already accepted the settlement but wished to be a part of the proposed class action; (iii) had already accepted the settlement and did not want to be a part of the proposed class action; or (v) wanted to proceed with the settlement offer. (ECF No. 67-10).

If the servicemember accepted the settlement offer, but wished to be a part of the proposed class action, Wells Fargo directed them to sign, date and return an attached form rescinding the release. (*Id.*; ECF No. 83-3, ¶ 23). Wells Fargo also directed those servicemembers to keep the settlement money, but advised this may affect any recovery received if the class action is certified and damages awarded. (ECF No. 67-10).

Between November 13, 2017 and December 28, 2017, hundreds of revised Initial Letters, Second Notices, Third Notices, Final Notices, and Supplemental Letters were sent to the Additional Population. (ECF No. 83-3, ¶ 24). To date, Wells Fargo has received

368 releases from this population, 53 of which have been rescinded.  (*Id*. at ¶¶ 25-26; ECF No. 83-8, Ex. A; ECF No. 83-9, Ex. B).

Plaintiff argues the letters sent from August 31, 2017 to November 15, 2017, are secretive, confusing and misleading, and asks this Court per Rule 23(d) to invalidate all releases obtained during this period and order Wells Fargo to issue corrective notices. (ECF No. 67, p. 27).

## III.   Legal Standard

It is well settled Defendants have a right to communicate settlement offers directly to putative class members.[5]  However, pursuant to *Gulf Oil Co. v. Bernard*,[6] if those communications are found to be abusive, district courts have "both the duty and broad

---

[5]*Barreras v. Travelers Home & Marine Ins. Co*., No. 12-CV-354 KG/SCY, 2014 WL 12521456, at *2 (D.N.M. Nov. 13, 2014), report and recommendation adopted, No. 12-354 KG/SCY, 2014 WL 12523771 (D.N.M. Dec. 9, 2014) ("[I]t is well-recognized that a defendant's transmission of a settlement offer to a potential class member is not inherently problematic."); *Marino v. CACafe, Inc*., No. 16-CV-6291 YGR, 2017 WL 1540717, at *2 (N.D. Cal. Apr. 28, 2017) ("Before a class is certified in a class action, counsel for both plaintiffs and defendants may communicate with the putative class, *ex parte*, about the lawsuit." (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981))); *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) (citing *Jones v. Jeld-Wen, Inc*., 250 F.R.D. 554, 562 (S.D. Fla. 2008)); 2 McLaughlin on Class Actions § 11:1 and n.2 (14th ed.) ("Consequently, a defendant pre-certification ordinarily may interview or communicate noncoercive or abusive, written settlement offers directly to putative class members."); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 95, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) (before certification, defendant continued to deal directly with potential class members concerning settlement offers previously negotiated with the Equal Employment Opportunity Commission ("EEOC")).
[6]452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

authority" to regulate such communications under Rule 23(d).[7]   Such regulation can include invalidating releases and issuing corrective notices.[8]

Nevertheless, any order regulating communications should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."[9]   This is because only "such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules Civil Procedure, especially Rule 23."[10]   The moving party, therefore, must demonstrate the communication at issue is "abusive in that 'it threatens the proper functioning of the litigation.'"[11]   Examples of abusive communications are those that are false, misleading or confusing, contain material omissions, or are coercive or intimidating.[12]

But even if there is clear evidence of abusive communications with potential class members, a court may only impose "the narrowest possible relief which would protect the respective parties."[13]   Overly broad relief can violate the First Amendment.[14]

---

[7]*Id.* at 99-100.

[8]*See*, *e.g.*, *Marino*, 2017 WL 1540717, at *2-5 (invalidating releases and ordering curative notice). *But see Tolmasoff*, 2016 WL 3548219, at *15 ("[I]t is not obvious that Rule 23(d) authorizes a court to unilaterally void executed releases.").

[9]*Gulf Oil*, 452 U.S. at 101.

[10]*Id.* at 101-02.

[11]*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (quoting *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003)).

[12]*See Jeld-Wen*, 250 F.R.D. at 561; *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003).

[13]*Gulf Oil*, 452 U.S. at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977) (internal quotation marks omitted)).

[14]*See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1205–07 (11th Cir. 1985).

## IV.   Analysis

Plaintiff argues the releases obtained between August 31, 2017 and November 15, 2017 should be invalidated and corrective notices sent because of Wells Fargo's secretive, misleading and confusing communications.  Wells Fargo denies its letters are secretive, misleading or confusing.  It states it has a right to directly communicate settlement offers to putative class members and is obligated to do so under the Consent Orders.  Wells Fargo further argues it has already taken the necessary corrective action by revising its letters to include details about the Class Action Complaint and by offering servicemembers the chance to rescind releases and keep the settlement payments.

### A.   Wells Fargo's Alleged Secretive Communications

Plaintiff argues the letters sent between August 31 and November 15 are secretive because Wells Fargo (1) began sending out letters the same day it withdrew its opposition to the motion to for leave to amend and did so without informing this Court, Plaintiff, or the DOJ; (2) directed putative class members with questions to call a Wells Fargo-controlled number; and (3) did not disclose the class action allegations until it revised its letters in mid-November of 2017.

Plaintiff primarily relies on *Kleiner v. First Nat. Bank of Atlanta*[15] for the proposition that Wells Fargo's alleged secret communications justify the relief requested. However, *Kleiner* is distinguishable for two very important reasons:  (1) it concerned a time period *after* certification, but before the required Rule 23(c)(2) certification notice

---

[15]751 F.2d 1193 (11th Cir. 1985).

was sent; and (2) defendant and its counsel were under court order to have very limited *ex parte* contact with putative class members until the court ruled on the issue.[16]   In direct violation of the district court's order, defense counsel and defendant bank, without informing the court or plaintiff, devised a plan to have bank employees individually call class members to persuade them to opt out of the class action.[17]   The bank's plan succeeded and nearly 2800 class members opted-out.[18]

The Eleventh Circuit upheld the district court's ruling the communications scheme blatantly violated the district court's previous orders banning defense contact with class members, and also upheld the district court's authority to ban defendant from soliciting opt-outs.[19]   The Court reasoned the one-sided communication scheme interfered with the court-approved notice and inquiry plan, which would have allowed the class to receive accurate and impartial information regarding certification.[20]   In the instant case, however, a class has not been certified, a Rule 23(c)(2) certification notice has not been approved or issued, and not only is there no order banning Wells Fargo from contacting putative class members, but the law does not preclude such actions.

Plaintiff also relies on *Kleiner* to suggest it is improper for Wells Fargo to provide a 1-800 number in its letters.  Plaintiff argues there is no way of knowing what Wells Fargo says to individuals during these phone calls, providing even more secrecy.   However, in

---

[16]*Id*. at 1196-97.
[17]*Id*. at 1197-98.
[18]*Id*. at 1198.
[19]*Id*. at 1200-03.
[20]*Id.*

*Kleiner*, the bank employees were individually making unsolicited calls to class members, which is very different than Wells Fargo providing a 1-800 number in a letter, while also providing Plaintiff's counsel's contact information in the same letter. Additionally, the DOJ Consent Order presently requires Wells Fargo to establish a toll-free number, and Wells Fargo records the calls.

During the February 2, 2018 hearing, however, Plaintiff's counsel stated he received a phone call from a servicemember who signed a release and who represented he called Wells Fargo and was instructed "to do nothing." While quite concerning and possibly construed as a back-door way of limiting class size, the Court notes the servicemember did call Plaintiff's counsel per the information provided in the letter.[21] Furthermore, neither party has provided authority discussing whether providing a toll-free number in a letter is an abusive communication. Nevertheless, the Court instructs Wells Fargo to ensure its employees are properly trained on handling calls from servicemembers related to this case.

Additionally, Plaintiff argues Wells Fargo's actions were secretive and deceptive because it did not inform this Court or Plaintiff before sending out the letters when Wells Fargo had not only the opportunity to do so at the October 6, 2017 Scheduling Conference, but overtly expressed a willingness at the conference to be forthcoming with regard to the exchange of information. Plaintiff is also bothered by the fact that Wells Fargo failed to inform the DOJ or the California court where the DOJ Consent Order was filed before

---

[21]*See, e.g., Tolmasoff*, 2016 WL 3548219, at *13 ("[T]he fact that these individuals reached out to Plaintiff's counsel suggests that GM's communications are not misleading as a whole . . . .").

sending out the letters. But Plaintiff cites no authority to support Wells Fargo had a duty to mention or even disclose the letters before mailing.[22]

Prior to certification Wells Fargo can, especially where obligated to do so under the Consent Orders, communicate settlement offers directly to putative class members, provided those communications are not abusive. And the law does not require Wells Fargo to disclose those communications with either this Court or Plaintiff before doing so.[23] Nor is there any authority for Plaintiff's argument requiring the Court's approval of pre-certification notices of possible class actions,[24] absent evidence of an abusive communication.

In the Court's opinion, Wells Fargo's failure to include class action information in the August 31 to mid-November letters is in direct conflict with existing law.[25] Also, Wells

---

[22]Plaintiff cites *Rankin v. Bd. of Educ. Wichita Pub. Sch.*, U.S.D. 259, 174 F.R.D. 695, 697 (D. Kan. 1997) for the proposition there is no legitimate purpose for defendants to communicate with potential class members concerning the lawsuit due to the potential for abuse. Wells Fargo, however, was obligated under the Consent Orders to send out the settlement offers. Additionally, the court in *Rankin* allowed communications with putative class members that did not reference the litigation because putative class members could choose to take advantage of defendant's offer and still choose to participate in the class action if certified. But one of Plaintiff's biggest complaints is that the letters here first went out without any reference to this lawsuit. Plus, Plaintiff does not seem to have any concerns with the substance of the revised letters. ECF No. 99, 2/2/18 hearing transcript, 38:15-39:19.

[23]*See* cases cited in note 5, *supra; see also Gulf Oil*, 452 U.S. at 95 (during pre-certification period, defendants communicated to potential class members settlement offers made in connection with a conciliation agreement reached with EEOC).

[24]Cases cited in Plaintiff's brief (ECF No. 67) at footnotes 44-45 are post-certification cases or ADEA specific.

[25]*See, e.g., Friedman v. Intervet Inc.*, 730 F.Supp.2d 758, 763 (N.D. Ohio 2010) (finding communications procuring settlements misleading where defendant did not inform putative class members they were possibly giving up participation in the putative class action); *Marino*, 2017 WL 1540717, at *3 (invalidating releases and ordering corrective notice where no information was given about the pending class action); *O'Connor v. Uber Techs., Inc.*, No. 13-CV-3826, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014) ("Courts have . . . found procuring waiver, settlement, or

Fargo knew of the possible class action on August 31 because it withdrew its objection to Plaintiff's request for leave to amend that same day.  Given Wells Fargo's past actions in this case and that the number of releases obtained will correlate with Wells Fargo's lack of numerosity argument at certification time, this Court is not entirely convinced Wells Fargo's failure was merely an oversight.

However, given the fact that Wells Fargo did (1) present evidence explaining how it became aware of the Additional Population[26]; (2) have remediation obligations under the Consent Orders; (3) cure its failures with the revised letters; (4) get the revised letters approved by the DOJ[27]; and (5) not have a duty to disclose its settlement offers to this Court or Plaintiff, the Court finds Plaintiff has not established a clear record of secretive communications justifying the relief requested.

### B.    Wells Fargo's Alleged Misleading and Confusing Communications

Neither does the Court find, per the reasons stated below, Plaintiff has established a clear record of misleading or confusing communications.

Regarding Wells Fargo's issuance of the Supplemental Letter[28], Plaintiff states the information given regarding the putative class action and options on proceeding is confusing and is buried in the letter.  However, the Supplemental Letter, consisting of a

---

arbitration agreements without providing adequate information about the pending class action [constitutes] misleading communications which the court may limit." (collecting cases)); 2 McLaughlin on Class Actions § 11:1 and n.34 (14th ed.) ("[I]f a defendant attempts to obtain a release of claims in a pending class action without informing putative class members of the pendency of the lawsuit, it is likely that the releases obtained would be voidable.").

[26]*See* Section I.A., *supra.*

[27]ECF No. 99, 2/2/18 hearing transcript, 63:19-25.

[28]The Supplemental Letter and rescission form can be found at ECF No. 67-10.

page and a half should contain detailed information on the class action allegations and options going forward, so it must be more than a "bare bones" notice. While the Supplemental Letter does contain some legal language, the Court does not find the language to be buried or too confusing for the average person to understand. Additionally, the rescission form attached to the Supplemental Letter is less than a half a page long and in the Court's opinion is not confusing.

Plaintiff further contends some servicemembers, having already received the settlement money, may have thrown the Supplemental Letter away before reading. While Plaintiff's supposition is plausible, he offers no evidence in this regard.

Plaintiff submitted two affidavits from his attorneys stating they received at least 20 calls from putative class members who were confused by the letters. (ECF No. 67-12, -13). Wells Fargo counters that at least 53 people were not confused, as shown by the rescissions received. The Court is of the opinion that at least 20 phone calls, out of the 368 releases at issue, cannot effectively support a finding that the communications are concernedly confusing.[29] Additionally, those individuals called Plaintiff's counsel, suggesting the communications as a whole are not misleading.[30]

---

[29]*See, e.g., Tolmasoff*, 2016 WL 3548219, at *13 ("While the affidavits offered by Plaintiff show that some individuals were confused by GM's communications, these individuals represent only a tiny fraction of the tens of thousands of possible class members. Moreover, the fact that these individuals reached out to Plaintiff's counsel suggests that GM's communications are not misleading as a whole: To the extent that some individuals were confused, they sought out legal advice, as GM's website recommends.").
[30]*Id.*

Plaintiff also takes issue with the letters not including a copy of the Class Action Complaint.  Admittedly, Wells Fargo did not attach the complaint, but it is not required to do so.[31]  Wells Fargo was only required to give sufficient information for putative class members to evaluate the settlement offers.  Wells Fargo states it did so by providing (1) a summary of the case; (2) a summary of Plaintiff's claims; (3) the procedural status of the case; (4) Plaintiff's counsel's contact information; and (5) instructions on how to participate.  (ECF No. 83, pp. 18-19).  The Court agrees Wells Fargo provided sufficient information in its revised letters.[32]

Plaintiff finally argues Wells Fargo improperly fixed its error by requiring servicemembers who signed releases to rescind the releases, rather than just unilaterally voiding all releases.  Plaintiff argues this effectively requires putative class members to "opt-in," which is contrary to Rule 23's "opt-out" procedure.  For authority, Plaintiff cites

---

[31]While there is not a requirement that the class action complaint be enclosed, it is recommended. 2 McLaughlin on Class Actions § 11:1 and nn.23, 36 (14th ed.) ("Although there is no requirement that the defendant accompany communications with the complaint in the case, courts have noted its presence or a summary of it favorably."); *Eshelman v. OrthoClear Holdings, Inc.,* No. C 07-01429 JSW, 2007 WL 2572349, at *3 (N.D. Cal. Sept. 4, 2007) (finding no corrective action necessary where the settlement offers (1) apprised the putative class about the pending lawsuit, (2) contained contact information for plaintiffs' counsel, and (3) included the second amended complaint).

[32]2 McLaughlin on Class Actions § 11:1 (14th ed.) (stating a settlement offer should include (1) a summary of the case and/or attach the complaint; (2) name of parties, docket number, and name of plaintiff's counsel; (3) current status of the case; (4) that the person may be eligible to participate in the class action; (5) that the person may seek advice of counsel; and (6) sufficient information to enable the person to evaluate the settlement offer and that options include: signing the enclosed release, contacting counsel about the pending action or doing nothing).

two footnotes in *Kleiner*,[33] which, as the court has previously noted, is a post-certification case and does not support Plaintiff's argument.

Wells Fargo argues its actions did not stifle class participation as shown by the 53 rescissions received to date.  But, the factor weighing in Wells Fargo's favor is that case law supports its fix of revising the letters to include the class action allegations and providing an opportunity for rescission of releases while permitting the servicemembers to keep the settlement money.[34]

## C.   Invalidating Releases and Issuing Corrective Notice

Plaintiff additionally cites four cases supporting his requested relief.  However, these cases are distinguishable.  *Camp v. Alexander*,[35] *Marino v. CACafe, Inc.*,[36] and

---

[33]Plaintiff cites footnotes 18 and 19 in *Kleiner*, 751 F.2d 1193.

[34]*See, e.g., Reed v. Dynamic Pet Prod.*, No. 15CV0987-WQH-DHB, 2015 WL 11822155, at * 2, 4 (S.D. Cal. Aug. 24, 2015) (refusing to invalidate settlement releases, but approving defendant's corrective notice of giving information about the class action and allowing putative class members 30 days to rescind settlement agreements); *In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 500-01 (S.D. Cal. 2008) (refusing to invalidate settlements, but ordering corrective letters to putative class members giving them more time to decide whether to withdraw settlements); *Stafford v. Brink's, Inc.*, No. CV 14-1352-MWF(PLAX), 2015 WL 12912324, at *3-4 (C.D. Cal. Aug. 14, 2015) (refusing to invalidate settlements, but ordering notice to those who signed releases that they could have more time to consider the offer, discuss with Plaintiff's counsel, and either complete the settlement or withdraw their prior release); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 CIV. 4567 (AGS), 2001 WL 1035132, at *7 (S.D.N.Y. Sept. 7, 2001) (refusing to invalidate releases, but ordering defendant to send corrective notices with information about the class action, including a statement the court will consider applications to avoid releases previously signed); *Griffin v. Aldi, Inc.*, No. 516CV0354LEKATB, 2017 WL 1957021, at *7 (N.D.N.Y. May 11, 2017) (refusing to invalidate settlements, but ordering defendant to send corrective notices with information about the lawsuit and plaintiff's counsel's information so putative class members feeling confused, misled or coerced could seek appropriate relief); *Friedman*, 730 F. Supp. 2d at 766-68 (same).

[35]300 F.R.D. 617 (N.D. Cal. 2014).

[36]No. 16-CV-6291 YGR, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017).

*Slavkov v. Fast Water Heater Partners I, LP*[37] all involve an employer-employee relationship, which adds a level of coercion not present here.   In *Marino*, the communications did not contain any information about the class action.[38]  Similarly, the letter in *Camp* did not include a description of the claims or the complaint, neither did it include plaintiff's counsel contact information, and it stated the lawsuit was motived by greed and could bankrupt the business.[39]  Here, Wells Fargo's revised letters, attempting to cure its omissions, include details about the proposed class action, Plaintiff's counsel's contact information, and do not contain inflammatory statements discouraging participation in the lawsuit.

In *Slavkov,* misleading statements were made about the requirement of judicial approval of FLSA settlements and about putative class member participation as witnesses in the class action if releases were signed.[40]  Neither is an issue here.

Finally, Plaintiff cites *County of Santa Clara v. Astra USA, Inc.*,[41] where the communications omitted the status of the case, plaintiffs' attorneys' contact information, and an important aspect of how the settlement amount was calculated.  Conversely, while Wells Fargo initially excluded important information about the putative class action from the letters, it sufficiently cured this defect with its revised correspondence.

---

[37]No. 14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015).
[38]2017 WL 1540717, at *2.
[39]300 F.R.D. at 620, 625.
[40]2015 WL 6674575. at *4-6.
[41]No. C 05-03740 WHA, 2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010).

### V.   Conclusion

The law is clear that sending out settlement offers to putative class members without disclosing sufficient information about a possible class action is abusive and can justify invalidating releases and issuing corrective notice.[42]  However, because Wells Fargo has already corrected this failure in a way approved by multiple courts, the Court finds it improper to invalidate the releases and issue corrective notices at this time.  The Court has thoroughly considered each of Plaintiff's arguments, especially that servicemembers do not have time to read and understand releases and rescissions because they are on active duty serving our country and that having outstanding debt can affect credit scores and put security clearances at risk.[43]  But the Court grapples with the gravity of Plaintiff's request and thus cannot invalidate over 300 releases where Plaintiff offers no evidence of any individuals wanting their releases invalidated.[44]

Nonetheless, the Court notes that other courts dealing with similar situations have opted, in lieu of unilaterally invalidating releases, to wait until after the class is certified and include a statement in the certification notice stating the court will entertain applications to void any releases previously signed at that time.[45]  The Court concludes this

---

[42]*See Camp*, *Marino*, *Slavkov*, and *County of Santa Clara* cases cited in nn.35-41, *supra*.

[43]ECF No. 99, 2/8/18 hearing transcript, 8:14-18; 11:1-10; 44:14-22.

[44]*See Tolmasoff*, 2016 WL 3548219, at *15 ("[I]t is inappropriate for a court to void releases without first knowing whether those who executed the releases want the releases to be voided."); *Friedman*, 730 F. Supp. 2d at 767 ("[T]he putative class members here have not individually requested that [the court] void their releases, and doing so en masse would not be appropriate given the individualized nature of the inquiry."); *Ralph Oldsmobile*, 2001 WL 1035132, at *7.

[45]*See Tolmasoff*, 2016 WL 3548219, at *15; *Friedman*, 730 F. Supp. 2d at 767 (holding the proper time to invalidate releases, if appropriate, is after class certification, as invalidation of settlements is a "drastic step" that should not be taken lightly).

is appropriate here.  Wells Fargo has put no time limitation for putative class members to rescind their releases.  It keeps open the option of invalidation for those putative class members who truly felt misled or confused, but would obviate the need to send out yet another letter, which could add to any potential confusion.  And, if certification is not granted, it avoids Wells Fargo having paid out settlement money without any valid releases being executed.

Finally, while the tendency would be to forbid Wells Fargo from using the releases in support of its lack of numerosity argument at certification briefing time, because the releases were, at least initially, obtained without disclosing the potential class action, the Court declines to do so.  But, through this Order, the Court notes the number of releases obtained is not certain because the possibility of invalidation still exists in the event the case meets the certification requirements.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion and Memorandum in Support of Order for Corrective Notice to be Issued to Putative Class Members (**ECF No. 67**) is **DENIED, but if the class is certified, the certification notice shall state the Court will entertain applications to void any releases obtained by Wells Fargo between August 31, 2017 and November 15, 2017.**[46]  **Also, Defendant shall continue to provide copies of future communications with putative class members to Plaintiff PRIOR to mailing as ordered at ECF No. 57.**

---

[46]*In re Potash Antitrust Litig.*, 161 F.R.D. 411 (D. Minn. 1995) (U.S. Magistrate Judge determined content of certification notice pursuant 28 U.S.C. § 636(b)(1)(A)).

**IT IS SO ORDERED.**


Dated at Wichita, Kansas this 21st day of February, 2018.


s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge