**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT TOPEKA**

JIN NAKAMURA,
on behalf of himself and all others
similarly situated,

                    Plaintiff,

v.

WELLS FARGO BANK,
NATIONAL ASSOCIATION
d/b/a WELLS FARGO DEALER
SERVICES, INC.,

                    Defendant.

Case No.  5:17-cv-04029-DDC-GEB

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**CERTIFICATION OF SETTLEMENT CLASS AND**
**<u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT [DOC. 126]</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii-iii

TABLE OF AUTHORITIES .......................................................................................iv-vi

I.    ISSUES PRESENTED..........................................................................................1

II.   THE CLASS SETTLEMENT................................................................................1

III.  BACKGROUND FACTS.......................................................................................1

IV.   APPLICABLE LAW AND ARGUMENT ............................................................1

      A.    Certification of a Class Action for Settlement ...........................................2

            1. Class Definition ...................................................................................2

            2. Elements of Rule 23(a) ........................................................................3

                  i. Numerosity....................................................................................3

                  ii. Commonality ................................................................................4

                  iii. Typicality....................................................................................6

                  iv. Adequacy of Representation ........................................................6

                        a. Plaintiff is an adequate Class Representative..........................6

                        b. No conflicts among class members preclude certification .......7

                        c. Plaintiff and his attorneys will prosecute this action
                           vigorously on behalf of the class ............................................7

            3. Elements of Rule 23(b)(3) ...................................................................8

                  i. Predominance................................................................................8

                  ii. Superiority ..................................................................................11

      B.    Preliminary Approval of the Proposed Settlement ...............................13

            1. Settlement Agreement Terms .............................................................14

2.  No Obvious Deficiencies, No Preferential Treatment and Within the Range of Possible Approval...........................................................14

3.  Fairly and Honestly Negotiated .......................................................................15

4.  Serious Questions of Law and Fact .................................................................16

5.  Immediate Recovery versus Protracted Litigation............................................17

6.  Judgment of the Parties.......................................................................................17

C.  The Proposed Notice of Settlement to the Class…………………………………18

VI.  CONCLUSION.................................................................................................................19

CERTIFICATE OF SERVICE ..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).....................................................8, 12

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*,
568 U.S. 455, 466 (2013).............................................................................................................9

*Ashley v. Reg'l Transp. Dist.*,
No. 05-CV-01567-WYD-BNB, 2008 WL 384579 (D. Colo. Feb. 11, 2008) ........................16

*Bailes v. Lineage Logistics, LLC*,
No. 15-cv-02457-DDC-TJJ, 2016 WL 7242501 (D. Kan. Dec. 15, 2007)
(Crabtree, J.)...........................................................................................................................2, 18

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ....................................................................................................12

*CGC Holding Co., LLC v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) ..............................................................................................9, 12

*Childress v. Bank of America, N.A.*,
No. 5:15-cv-231 (E.D.N.C. Feb. 5, 2018)................................................................................17

*Childs v. Unified Life Ins. Co.*,
No. 10-CV-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011)............................15, 16, 17

*Davoll v. Webb*,
160 F.R.D. 142 (D. Colo. 1995) .................................................................................................2

*Daye v. Community Financial Service Centers, LLC*,
313 F.R.D. 147 (D.N.M. 2016)................................................................................................11

*Fager v. CenturyLink Commc'ns., LLC*,
854 F.3d 1167 (10th Cir. 2016) ...............................................................................................18

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
837 F. Supp. 2d 581 (E.D. Va. 2011) .....................................................................................10

*Joseph v. General Motors Corp.*,
109 F.R.D. 635 (D. Colo. 1986) .................................................................................................2

*Lowery v. City of Albuquerque*,
273 F.R.D. 668 (D.N.M. 2011)...................................................................................................7

*Menocal v. GEO Grp., Inc.*,
  882 F.3d 905 (10th Cir. 2018) ...................................................................... *passim*

*In re Motor Fuel Temp. Sales Practices Litig.*,
  292 F.R.D. 652 (D. Kan. 2013) ...............................................................................6

*In re Motor Fuel Temperature Sales Practices Litig.*,
  286 F.R.D. 488 (D. Kan. 2012) .............................................................................13

*In re: Syngenta AG MIR 162 Corn Litig.*,
  No. 14-MD-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) ..........................4, 9, 10

*Nieberding v. Barrette Outdoor Living, Inc.*,
  302 F.R.D. 600 (D. Kan. 2014) (Crabtree, J.).........................................................4, 6, 7, 11

*Payson v. Capital One Home Loans, LLC*,
  No. 07-2282-JTM, 2008 WL 4642639 (D. Kan. Oct. 16, 2008) ...........................................10

*Pelt v. Utah*,
  539 F.3d 1271 (10th Cir. 2008) ...............................................................................7

*Rex v. Owens ex rel. State of Okla.*,
  585 F.2d 432 (10th Cir. 1978) ...............................................................................3

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ...............................................................................13, 16

*Stambaugh v. Kansas Dept. of Corrections*,
  151 F.R.D. 664 (D. Kan. 1993).................................................................................3

*D.G. ex rel. Stricklin v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ...............................................................................6

*Tennille v. Western Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ...............................................................................7

*Trevizo v. Adams*,
  455 F.3d 1155 (10th Cir. 2006) ...............................................................................3

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)....................................................................................10, 11

*United States of America v. Wells Fargo Bank, N.A.*,
  No. 2:16-07336 (C.D. Cal. Sept. 29, 2016) ...................................................................4, 15

*In re Urethane Antitrust Litig.*,
  768 F.3d 1245 (10th Cir. 2014) ...............................................................................9

*Williams v. Aramark Sports, LLC*,
 CIV.A. 10-1044, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) ...............................................16

**Federal Statutes**

50 U.S.C. § 3902 ...............................................................................................................12

50 U.S.C. § 3911 ...............................................................................................................10

50 U.S.C. § 3918 .................................................................................................................2

50 U.S.C. § 3952 ........................................................................................................4, 5, 10

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

**Other Authorities**

John Odom, "Legal Kevlar for Servicemembers," <u>Trial</u>, June 2014 ...........................................16

3 MOORE'S FEDERAL PRACTICE ¶ 23.22[3][a] (3d ed. 1999) .................................................3

2 William B. Rubenstein, *Newberg on Class Actions* § 3:21 (5th ed. 2012) .................................4

2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012) ...............................10

2 William B. Rubenstein, *Newberg on Class Actions* § 4:57 (5th ed. 2012) ...............................11

## I.      ISSUES PRESENTED

1.      Should the Court certify this action as a class action so it can preliminarily approve the proposed settlement and notice of settlement?

2.      Is the proposed settlement fair, reasonable, and adequate?

3.      Should the proposed notice of settlement be approved and sent to the settlement class members so they can exercise their rights to participate, object, or opt-out of the class action?

## II.     THE CLASS SETTLEMENT

The Settlement Agreement is attached as Exhibit "1" and includes the following exhibits: Exhibit A (Distribution Plan) and Exhibit B (Notice of Settlement).

## III.    BACKGROUND FACTS

Jin Nakamura, on behalf of himself and a putative class of active and former military servicemembers, sued Wells Fargo for allegedly illegally repossessing their motor vehicles while they were in active duty military service. *See* Plaintiff's First Amended Class Action Complaint ("FAC"). (Doc. 20). On October 13, 2018, Wells Fargo filed an Answer and denied liability to Plaintiff and the putative class. (Doc. 30). After extensive discovery and motion practice, the parties agreed to settle the case after two full-day mediation sessions with former United States District Judge Layn R. Phillips. (Doc. 121). Although Wells Fargo continues to deny that certification of a litigation class would be proper, Wells Fargo agrees that this case should be certified as a class action for the purposes of settlement and, thus, does not oppose this Motion.

## IV.     APPLICABLE LAW AND ARGUMENT

Preliminary approval of a class action settlement sets the stage for giving notice to the settlement class members and then formal consideration of the fairness of the Settlement. The three-step framework is as follows: (1) the Court determines whether the proposed class satisfies

the requirements of Federal Rule of Civil Procedure 23; (2) the Court determines whether the proposed settlement is fair, reasonable, and adequate; and (3) the Court determines whether the proposed notice constitutes the best notice practicable under the circumstances and comports with due process. *See Bailes v. Lineage Logistics, LLC*, No. 15-cv-02457-DDC-TJJ, 2016 WL 7242501, at *2–7 (D. Kan. Dec. 15, 2007) (Crabtree, J.). This brief follows this three-step framework.

### A. Certification of a Class Action for Settlement

#### 1. <u>Class Definition</u>

To satisfy the requirements of Rule 23(a), the class must be adequately defined so that potential class members can be identified. *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 638 (D. Colo. 1986). This means that the class description must be sufficiently definite so that it is "administratively feasible" for the Court to determine whether a particular individual is a member of the Class. *Davoll v. Webb,* 160 F.R.D. 142, 144 (D. Colo. 1995).

Plaintiff seeks certification of the following class for purposes of preliminary approval and notice:

> All servicemembers who, before the servicemember entered military service, paid a deposit or installment on a motor vehicle loan originated, acquired, and/or serviced by Wells Fargo Bank, N.A., its predecessors, successors, subsidiaries, and assigns ("Wells Fargo"), and whose motor vehicle subject to the loan was repossessed by Wells Fargo while the servicemember was in active military service without a court order or a waiver pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. 3918, authorizing the repossession between January 1, 2006, and December 31, 2017, and have not already released their claims.

Ex. 1, Settlement Agreement ¶ I.4 (the "Class"). This definition is sufficiently definite in that it is administratively feasible to identify the Settlement Class Members. 410 servicemembers fall within the definition of the Class and have already been identified from Wells Fargo's records during the course of this litigation. Indeed, Wells Fargo already has mailing information for these individuals. Wells Fargo can provide that information to the Settlement Administrator so that the

Settlement Administrator can mail the Notice of Settlement and, once the Settlement becomes Final and Non-Appealable, mail the Distribution Checks, to the Settlement Class Members.

### 2.   Elements of Rule 23(a)

Under Fed. R. Civ. P. 23(a), a class may be certified if four prerequisites are met: (1) Numerosity: "the class is so numerous that joinder of all members is impracticable"; (2) Commonality: "there are questions of law or fact that are common to the class"; (3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) Adequacy of representation: "the representative parties will fairly and adequately represent the interests of the class." *Trevizo v. Adams,* 455 F.3d 1155, 1161–1162 (10th Cir. 2006) (citing Rule 23(a)).

### i. Numerosity

The Tenth Circuit has no set formula satisfying the numerosity requirement of Rule 23(a)(1). *Trevizo,* 455 F.3d at 1162. Instead, the Court is granted "wide latitude" in making the determination. *Id.* Plaintiffs must generally establish, however, that the class is so numerous as to make joinder impracticable. *Id.* The number of class members involved may be established by reasonable estimate, *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 436 (10th Cir. 1978), and the identity of each class member or the specific number of members need not be proven. *Stambaugh v. Kansas Dept. of Corrections,* 151 F.R.D. 664, 673 (D. Kan. 1993).

There are 410 Settlement Class Members from many different states, making joinder impracticable and establishing the numerosity requirement of Rule 23(a)(1). *See* 3 MOORE'S FEDERAL PRACTICE ¶ 23.22[3][a] (3d ed. 1999) (modern trend is that 21 or fewer plaintiffs will be insufficient, between 21 and 40 plaintiffs will receive a mixed response, and with more than 40 plaintiffs the courts generally find that the requirement of numerosity has been met).

### ii. Commonality

Commonality is rarely a barrier to class certification because "[a] finding of commonality requires only a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018). It is well settled that the requirement of "common questions of law or fact" in Rule 23(a) is disjunctive; that is, *either* a question of law *or* a question of fact will suffice. Thus, factual differences are not fatal to a class action if a common question of law exists. *Newberg on Class Actions* § 3:21 (5th ed.). Here, there are several common questions of law or fact.

Plaintiff alleges that Wells Fargo engaged in a pattern or practice of violating Section 3952(a) of the Servicemembers Civil Relief Act, 50 U.S.C. § 3901, *et seq.* (the "SCRA") by repossessing the motor vehicles of SCRA-protected servicemembers without court orders authorizing the repossessions. The Department of Defense provides lenders an automated database run by the Defense Manpower Data Center ("DMDC database") to check whether their customers are entitled to SCRA protections. Plaintiff alleges that until at least December 2011, Wells Fargo's written policies did not require it to check the DMDC database or to take any other measures to determine customers' military statuses prior to repossession. Even after December 2011, Plaintiff alleges that Wells Fargo routinely engaged in repossessions that violated the SCRA. *See* FAC [Doc. 20], at ¶¶ 2, 3, 17–27, 82; *see also* Complaint filed in *United States of America v. Wells Fargo Bank, N.A.*, No. 2:16-07336 (C.D. Cal. Sept. 29, 2016). Wells Fargo's alleged failure to implement a policy, as well as its pattern or practice of disregarding the policy once implemented, makes this case appropriate for class action treatment. *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 609 (D. Kan. 2014) (Crabtree, J.) (explaining that commonality is met where the issue of the defendant's liability "is common to the entire class."); *see also In re: Syngenta AG*

*MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856, at *4–5 (D. Kan. Sept. 26, 2016) (same and further noting that, "[e]ssentially, anything concerning [the defendant's] actions and the general effects of those actions presents a common question that will be addressed and answered by common proof.").

    The common questions of fact or law include but are not limited to:

1. Whether Wells Fargo's failure to obtain a court order before repossessing the vehicles belonging to Plaintiff and the Settlement Class Members while they were in active military service violated 50 U.S.C. § 3952(a);

2. Whether Wells Fargo failed to implement policies and/or procedures to comply with the SCRA;

3. Whether Wells Fargo failed to follow its policies and/or procedures to determine Plaintiff's and Settlement Class Member's military statuses prior to repossession;

4. Whether Wells Fargo engaged in a pattern or practice of repossessing active-duty servicemembers' vehicles without prior court orders authorizing the repossessions;

5. Whether Wells Fargo engaged in a pattern or practice of continuing collection activities on servicemembers' motor vehicle loans after determining servicemembers' military statuses;

6. Whether Plaintiff and the Settlement Class Members were damaged by the loss of their vehicles;

7. Whether Plaintiff and the Settlement Class Members were damaged by Wells Fargo's reporting of the repossessions to credit reporting agencies; and

8. Whether Wells Fargo's conduct was intentional, wanton, reckless, and/or malicious such that Plaintiff and the Settlement Class Members are entitled to recover punitive damages.

*See* FAC [Doc. 20], at ¶ 82. Common evidence on these same questions would be presented in Plaintiff's and the Settlement Class Members' cases had the claims not been settled in this class action; litigating Wells Fargo's conduct in hundreds of individual suits would be inefficient and cost more than the damages the Settlement Class Members stand to individually recoup. Wells

Fargo denies Plaintiff's allegations and continues to believe that certification of a litigation class would be improper. But, for the purposes of settlement, Wells Fargo does not contest this issue.

### iii. Typicality

The test for typicality focuses on the legal claims brought. Typicality is met "so long as the claims of the named plaintiff and class members are based on the same legal or remedial theory." *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). "Differing fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory.'" *Menocal*, 882 F.3d at 914 (citation omitted); *see also id.* at 924 n.15 ("[F]actual differences do not defeat typicality because the class members' legal theory…does not change[.]"). In this case, every member of the Class has the same legal theory, so typicality is met.

### iv. Adequacy of Representation

Adequacy focuses both on the proposed class representative and the proposed class counsel. Adequacy tests (1) whether the named plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Nieberding*, 302 F.R.D. at 610; *In re Motor Fuel Temp. Sales Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013).

### a.  Plaintiff is an adequate Class Representative.

Jin Nakamura has demonstrated that he is an adequate representative of the Class. Mr. Nakamura is a sergeant in the United States Army. He is currently serving a two-year deployment in South Korea. Mr. Nakamura sat for a deposition in December 2017, two days before he was deployed. During the parties' first day-long mediation session with Judge Phillips in February 2018, Mr. Nakamura stayed up all night to participate in the mediation from South Korea via

Skype. He took personal leave to travel from South Korea to California to attend the second day-long mediation with Judge Phillips in May 2018. Mr. Nakamura has vigorously prosecuted this action on behalf of the Class. Soldiers rely on officers like Sergeant Nakamura to lead them on the battlefield— Mr. Nakamura has shown that he is equally capable of leading his fellow soldiers in the courtroom.

### b.  No conflicts among class members preclude certification.

"Minor conflicts among class members do not defeat certification; to defeat class certification, a conflict must be 'fundamental' and go to specific issues in controversy. A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in a benefit to other class members." *Nieberding*, 302 F.R.D. at 610; *see also Tennille v. Western Union Co.,* 785 F.3d 422, 430 (10th Cir. 2015) ("Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.") (internal citation omitted). Here, Mr. Nakamura and the Class Members were harmed in a similar manner; each member of the Class allegedly had their vehicle repossessed by Wells Fargo while they were in active military service—none of them benefitted from Wells Fargo's conduct. There is no evidence of any conflict of interest between Mr. Nakamura and any other class member.

### c.  Plaintiff and his attorneys will prosecute this action vigorously on behalf of the class.

The Tenth Circuit has recognized that the "primary criterion for determining whether the class representative [will] adequately represent[] his class … is whether the representative, through qualified counsel, [will] vigorously and tenaciously protect[] the interests of the class." *Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008). In this regard, the "experience and competence of the attorney[s] representing the class [will] inform the court's analysis." *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 680 (D.N.M. 2011).

Plaintiff has hired qualified counsel with extensive experience in consumer protection cases and class actions. Bryce Bell, of Bell Law, LLC, previously served as general counsel for several national financial institutions. Since entering private practice, Bell Law, LLC has been dedicated to protecting consumers in Missouri and Kansas and has certified several class actions in Missouri.[1] A. Scott Waddell of Waddell Law Firm LLC also focuses his practice on consumer protection, and he has certified a class action in Missouri.[2] Rex Sharp, of Rex A. Sharp, P.A., has certified dozens of class actions in federal and state courts across the country.[3] This Court recently reviewed the qualifications of Mr. Sharp and Ryan Hudson of his firm when it appointed them to the plaintiffs' leadership structure in *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, which is currently pending before The Honorable Daniel D. Crabtree as a multi-district litigation in the District of Kansas (Case No. 17-md-2785). Mark Schmitz, of Bell Law, LLC, and Scott Goodger, of Rex A. Sharp, P.A., have been involved in consumer protection and class action cases with their respective firms. Together, Bell Law, LLC, Waddell Law Firm LLC, and Rex A. Sharp, P.A. have the experience, manpower, and financial resources to vigorously and competently protect the interests of the Class. For these reasons, adequacy is satisfied.

### 3.   Elements of Rule 23(b)(3)

#### i. Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622-23, 117 S.Ct.

---

[1] Additional information about Bell Law, LLC is available at https://bell-law-kc.com/.
[2] Additional information about Waddell Law Firm LLC is available at http://www.aswlawfirm.com/.
[3] Additional information about Rex A. Sharp, P.A. is available at http://www.midwest-law.com/.

2231 (1997); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Put differently, predominance "'asks whether the common, aggregation-enabling, issues in the

case are more prevalent or important than the non-common, aggregation-defeating, individual

issues.'" *CGC Holding*, 773 F.3d at 1087 (quoting 2 William B. Rubenstein, *Newberg on Class

Actions* §4:49, at 195-96 (5th ed. 2012)). In doing so, "[i]t is not necessary that all of the elements

of the claim entail questions of fact and law that are common to the class, nor that the answers to

those common questions be dispositive." *Menocal*, 882 F. 3d at 914 (quoting *CGC Holding*, 773

F. 3d at 1087).

Predominance first requires the Court to characterize whether each question is common or

not, and then "weigh which issues predominate." *Id.* (quotation omitted). "Tailored to the

predominance inquiry, the question is whether the link between the defendants' actions and the

class's injuries can be adduced through common evidence." *CGC Holding*, 773 F. 3d at 1087.

"It is not necessary that all of the elements of whether the claim entail questions of fact and

law that are common to the class, nor that the answers to those common questions be dispositive."

*Id.* at 1087. In other words, the real focus of predominance is on the "key elements" and whether

they "raise[] common questions that [are] capable of class-wide proof." *In re Urethane Antitrust

Litig.*, 768 F.3d 1245, 1254 (10th Cir. 2014). As the Supreme Court has clarified post-*Dukes*, "the

focus of Rule 23(b)(3) is on the predominance of common *questions*"—not necessarily common

answers. *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013)

(emphasis in original.).

Here, as set forth above, "all plaintiffs allege that the same conduct by [Wells Fargo] caused

the same injuries" and thus this litigation "involves a great many common questions, including all

issues regarding [Wells Fargo's] conduct and the effects of that conduct." *In re: Syngenta AG MIR*

*162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856, at *5 (D. Kan. Sept. 26, 2016). To prove a violation of Section 3952 of the SCRA, the servicemember need only show that Wells Fargo repossessed his or her vehicle without a court order while he or she was in a period of military service, as that term is defined by 50 U.S.C. § 3911. The SCRA is a strict liability statute. *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 837 F. Supp. 2d 581, 585 (E.D. Va. 2011) (observing that the SCRA "is a strict liability statute" and "does not require proof of any *mens rea* to establish civil liability"). These elements can be shown from Wells Fargo's own records and public records—no individual testimony or evidence from class members is needed to make a prima facie showing of liability. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted)."); *Payson v. Capital One Home Loans, LLC*, No. 07-2282-JTM, 2008 WL 4642639, at *4 (D. Kan. Oct. 16, 2008) (same).

Additionally, many of the injuries suffered by Plaintiff and the Settlement Class Members are common—i.e., the loss of their vehicles and damage to their credit. Even if some Settlement Class Members suffered damages not suffered by other class members, class certification is not defeated. It is axiomatic in the Tenth Circuit that "'[t]he presence of individualized damages issues'" is not a barrier to class certification and that "'[c]lass-wide proof is not required for all issues' for predominance under Rule 23(b)(3)." *In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *5 (quoting *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1268-69 (10th Cir. 2014)); *see also id.* at *10 ("the presence of individual questions concerning damages does not

necessarily defeat class certification, and the same is true for individual questions concerning defenses.").

Nor do Wells Fargo's alleged affirmative defenses, such as release or statute of limitations, destroy class certification. *Tyson Foods*, 136 S. Ct. at 1045 (advising that a class action "'may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'") (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)); *see also* 2 *Newberg on Class Actions* § 4:57 (5th ed.) ("Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification."); *Daye v. Community Financial Service Centers, LLC*, 313 F.R.D. 147 n.11 (D.N.M. 2016) (same and collecting cases and observing near uniformity in "most Circuits" and treatises on this issue). This Court already reached the same conclusion in *Nieberding*, ruling that individualized questions regarding affirmative defenses would not defeat predominance. *Nieberding*, 302 F.R.D. at 616-17. So too here. Wells Fargo denies Plaintiff's allegations and continues to believe that certification of a litigation class would be improper. But, for the purposes of settlement, Wells Fargo does not contest that the common issues predominate over any individualized issues.

### ii. Superiority

Rule 23(b)(3) requires that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy.[4] The Tenth Circuit and the Supreme Court have

---

[4] The factors for the Court to consider in making this determination include: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concerning the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Because

summarized superiority as follows: "[i]t is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding,* 773 F.3d at 1096 (quoting *Amchem*, 117 S.Ct. at 2246).

This case raises a unique and important issue of superiority. The putative class includes active-duty servicemembers who are deployed throughout the world and cannot devote the time to litigate their claims on an individual basis. The policy behind the SCRA argues strongly for class treatment. The purpose of the SCRA is "to provide for, strengthen, and expedite the national defense through protection extended by this chapter to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1); *see Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718–19 (9th Cir. 2010) (the court's superiority assessment should be consistent with the policies advanced by the underlying statute). The inefficiency of individual suits is not merely a private matter here. Many of the servicemembers are in active duty on military bases scattered across the country and overseas and would be unable to participate in individual litigation because of their service to our nation. *Menocal*, 882 F.3d at 915 ("Considerations such as class members' … geographic dispersal therefore weigh in favor of class certification."). Given this reality, it is not surprising that no other servicemember has commenced individual litigation against Wells Fargo for the conduct alleged in this lawsuit.

Moreover, while this case involves many of our nation's bravest, those same ranks include some of the most vulnerable. Many of these servicemembers, including Plaintiff Jin Nakamura,

---

Plaintiff asks to certify a settlement class, the Court need not consider the fourth requirement—ease of management. *Amchem*, 521 U.S. at 620.

suffer from PTSD. FAC [Doc. 20] at ¶44. For these Settlement Class Members, enduring the emotional stresses of individual litigation is simply not an option. This unfortunate reality also supports a finding of superiority. *See Menocal*, 882 F.3d at 915 ("[T]he class action device is especially pertinent to vulnerable populations.") (citation omitted).

In sum, a class action is the best way for servicemembers across the nation and the world to seek redress for their similar injuries.

### B.      Preliminary Approval of the Proposed Settlement

Before approving the proposed Settlement, the Court must find it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotations and citation omitted).

Additionally, the Tenth Circuit has provided four non-exclusive factors to guide the Court's analysis of a proposed class action settlement:

(1)      whether the proposed settlement was fairly and honestly negotiated;
(2)      whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3)      whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4)      the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The following sections address each factor in turn after reviewing the material terms of the proposed Settlement Agreement.

1.      **Settlement Agreement Terms**

The fully executed Settlement Agreement is attached as **Exhibit 1**, together with Exhibits A and B. Under the terms of the Settlement Agreement, Wells Fargo will pay $5,125,000 to the Class, with a net recovery to each Settlement Class Member of approximately $12,300. Ex. 1, Settlement Agreement ¶ V.A. In return for the performance by Wells Fargo under the Settlement Agreement, the Settlement Class Members agree to release all Released Claims in the Settlement Agreement, which include any claims that were or could have been asserted in this action. Ex. 1, Settlement Agreement ¶ I.25. (defining "Released Claims").

Plaintiff will seek approval from the Court for a Class Representative Incentive Award of 1.5% of the Settlement Fund as compensation for his successful efforts on behalf of the Settlement Class Members. Ex. 1, Settlement Agreement ¶ VII.E. Proposed Class Counsel will also seek approval from the Court for an award of: (a) a fee not to exceed 33% of the gross value of the Settlement Fund; and (b) its litigation expenses. Ex. 1, Settlement Agreement ¶ VII.A. Importantly, both attorney's fees and litigation expenses, as awarded by the Court, will be paid by Wells Fargo, separate and apart from the Settlement Fund. Ex. 1, Settlement Agreement ¶ VII.B. Wells Fargo does not oppose an award of a Class Counsel fee and litigation expenses and a Class Representative Incentive Award in these amounts. Ex. 1, Settlement Agreement ¶ VII.A. & E. The Notice and Administrative Costs will be paid by Wells Fargo. Ex. 1, Settlement Agreement ¶ I.A.19 & IV.A.

2.      **No Obvious Deficiencies, No Preferential Treatment and Within the Range of Possible Approval**

The Settlement Agreement and its exhibits evince no obvious deficiencies or preferential treatment. Neither any group of Settlement Class Members nor Plaintiff receives preferential treatment. The cash payment in the Settlement Agreement of $5,125,000 compares favorably to the Class's estimated total possible class-wide recovery. The total amount represents a substantial

class-wide recovery, especially in light of the legal defenses to liability raised by Wells Fargo. *See Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at \*12 (N.D. Okla. Dec. 2, 2011) (granting preliminary approval to a settlement that would distribute 30-50% of insurance premiums actually paid to class members). Furthermore, the net recovery to each Settlement Class Member of approximately $12,300 compares favorably to recovery obtained in similar actions. *See* Consent Order [Doc. 3-1] filed in *United States of America v. Wells Fargo Bank, N.A.*, No. 2:16-07336 (C.D. Cal. Sept. 29, 2016) at ¶ 22 (net recovery for each repossession approximately $10,000). The settlement amount is fair, adequate, and reasonable for purposes of preliminary approval. Although the fairness, reasonableness and adequacy of Settlement will be determined at the Settlement Fairness Hearing, the Settlement is within the "range of possible approval" and presents no reason why preliminary approval should not be granted.

### 3.   <u>Fairly and Honestly Negotiated</u>

> The Court is concerned with the protection of class members whose rights may not have been given "adequate consideration during the settlement negotiations." *Wilkerson,* 171 F.R.D. at 283; *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1979.1 (3d ed.2005). The Court is also required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. State of Colorado,* 937 F.2d 505, 509 (10th Cir.1991). The fairness of the negotiating process is to be examined "'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Johnson v. City of Tulsa,* 2003 WL 24015151, at \*7 (N.D.Okla.May12, 2003) (*quoting Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir.1983)).

*Childs,* 2011 WL 6016486, at \* 12.

The Settlement Agreement is the product of approximately nine months of good faith, adversarial, arm's-length negotiations between experienced counsel. The legal issues were fully presented during two full-day mediation sessions before former United States District Judge Layn R. Phillips. With the assistance of Judge Phillips, the parties fully educated themselves on the strengths,

weaknesses, and possible damages in the case.  Judge Phillips' adept mediation of this case supports the conclusion that the Settlement was fairly and honestly negotiated. *See Ashley v. Reg'l Transp. Dist.,* No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months)

Where settlement results from arm's-length negotiations, "courts have given considerable weight to the views of experienced counsel as to the merits of a settlement." *Williams v. Aramark Sports, LLC,* CIV.A. 10-1044, 2011 WL 4018205, at * 7, n.7 (E.D. Pa. Sept. 9, 2011). So should it be here where the parties' counsel and the parties are convinced that the Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Class. *See, e.g.*, *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Childs,* 2011 WL 6016486, at * 13.

### 4.    Serious Questions of Law and Fact

There can be no real debate about whether serious questions of law and fact exist in this case. Liability and class certification are complicated issues in any class case, let alone in a case such as this where the operative statute, the SCRA, has only been interpreted by a handful of courts across the country. *See* John Odom, "Legal Kevlar for Servicemembers," Trial, June 2014 ("Parties settle the vast majority of these cases before trial, leaving no judicial footprint in their wake."). "The presence of such doubt tips the balance in favor of settlement because "settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."" *Childs*, 2011 WL 6016486, at * 13 (quoting *In re Qwest Communications Intern., Inc.,* 625 F.Supp.2d 1133, 1138 (D. Colo. 2009)).

16

### 5.   Immediate Recovery Versus Protracted Litigation

As this Court is likely aware from its experience with class actions, the likelihood is great that, without a settlement, the parties faced many years of protracted litigation both in this Court and the appellate courts. And even if Plaintiff survived the gauntlet of certification of a litigation class, a merits trial, and potential appeals, there is no guarantee that the recovery eventually obtained would exceed the substantial immediate recovery provided for in the proposed Settlement. Furthermore, the costs of litigating the case through trial would be substantial and could swallow whole the potential recovery to the Class. The proposed Settlement, wherein Wells Fargo has agreed to pay proposed Class Counsel's fee and expenses as awarded by the Court, separate and apartment from the Class's recovery, eliminates this risk. In the face of these circumstances, the prospect of immediate recovery also strongly favors preliminary approval. *See Childs*, 2011 WL 6016486, at * 13.

### 6.   Judgment of the Parties

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Childs*, 2011 WL 6016486, at *14 *(quoting Lucas v. Kmart Corp.,* 234 F.R.D. 688, 695 (D. Colo. 2006) and citing *Marcus v. Kansas Dept. of Revenue,* 209 F.Supp.2d 1179, 1183 (D. Kan. 2002)). Plaintiff's counsel has substantial experience with the settlement of consumer class actions. Wells Fargo's counsel also has substantial experience in class actions, having handled and settled many similar class actions for the defense for years. *See, e.g.*, *Childress v. Bank of America, N.A.*, No. 5:15-cv-231 (E.D.N.C. Feb. 5, 2018) (granting final approval of settlement of SCRA class action where defendant was represented by Wells Fargo's counsel). Both parties' counsel believe the Settlement to be fair, adequate, and reasonable. Preliminary approval is warranted.

### C.       The Proposed Notice of Settlement to the Class

When a court preliminarily approves a class action settlement, it must direct notice to class members. Fed. R. Civ. P. 23(e)(1). The proposed notice must provide the best notice practicable under the circumstances and comport with due process. *Bailes*, 2016 WL 7245201 at *6 (citing *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F. 3d 935, 943–44 (10th Cir. 2005). To comport with due process, the notice must include "individual notice to all members who can be identified through reasonable effort." *Bailes*, 2016 WL 7245201 at *6 (internal quotations and citations omitted).

The proposed form of notice is attached as Exhibit B to the Settlement Agreement. The proposed Notice of Settlement informs the Settlement Class Members of the terms of the Settlement Agreement (and where to get a full copy if desired), Class Counsel's request for a fee and litigation expenses award and a Class Representative Incentive Award for Mr. Nakamura, as well as all other information believed to be necessary to comply with the law and provide adequate notice to the Class. The Notice of Settlement also advises the Settlement Class Members of their right to appear at the Final Fairness Hearing and to have counsel of their own choice, as well as the requirements if they desire to object to or opt out of the Settlement.

The Settlement Agreement provides for the Settlement Administrator to mail the Notice of Settlement to the Settlement Class Members. Ex. 1, Settlement Agreement ¶I.19.b. "The Supreme Court has consistently endorsed notice by first-class mail" holding "a fully descriptive notice…sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Fager v. CenturyLink Commc'ns., LLC*, 854 F.3d 1167, 1173 (10th Cir. 2016). The 410 Settlement Class Members have already been identified from Wells Fargo's records during the course of this litigation. Wells Fargo already has mailing information for these

individuals. Wells Fargo can provide that information to the Settlement Administrator so that the Settlement Administrator can mail the Notice of Settlement. The proposed Notice Plan is the best practicable under the circumstances and comports with due process.

## VII.    CONCLUSION

Plaintiff has submitted together with this unopposed motion a proposed agreed order to chambers in accordance with the local rules. Certain dates contemplated therein are dependent upon the fact and timing of the Court's preliminary approval of the Settlement and, thus, are left blank. Plaintiff respectfully requests the Court set this matter for hearing at the Court's earliest availability.

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp          KS#12350
Ryan C. Hudson        KS#22986
Scott Goodger         KS#26480
REX A SHARP, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
T: 913-901-0505
F: 913-901-0419
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

Bryce B. Bell         KS#20866
Mark W. Schmitz       KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com

A. Scott Waddell        KS#20955
Waddell Law Firm LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-914-5365
F: 816-817-8500
scott@aswlawfirm.com

***Attorneys for Plaintiff and
Proposed Class***

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with the Court's e-Filing system and thereby served upon all attorneys of record on October 10, 2018.

*/s/ Rex A. Sharp*
Rex A. Sharp