IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT TOPEKA

JIN NAKAMURA,
individually and on behalf of all others
similarly situated,

                Plaintiff,

v.

                        Case No.  5:17-cv-04029-DDC-GEB

WELLS FARGO BANK,
NATIONAL ASSOCIATION
d/b/a WELLS FARGO DEALER
SERVICES, INC.,

                  Defendant.

                        Fairness Hearing: **May 15, 2019 at 9 a.m.**

**MEMORANDUM IN SUPPORT CLASS REPRESENTATIVE'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii-

TABLE OF AUTHORITIES .......................................................................................... iii

I. ISSUES PRESENTED...................................................................................1

II. BACKGROUND FACTS...............................................................................1

III. ARGUMENT AND AUTHORITIES.............................................................2

    A. Certification of a Settlement Class Action.............................................2

        1. Attorneys' Fees are Calculated as a Percentage of the Fund
          under Tenth Circuit Law......................................................................3

        2. The Fee Request Is Reasonable under the Johnson Factors ...............3

        3. The Request for Reimbursement of Litigation Expenses is Reasonable
          under Federal Common Law ..........................................................15

IV. CONCLUSION............................................................................................16

CERTIFICATE OF SERVICE .....................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)................................................................................................7

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ...................................................................... *passim*

*Cecil v. BP Am. Prod., Inc.*,
    No. 16-CV-410-KEW (E.D. Okla. Oct. 16, 2018) .................................................5

*Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XIII-A, L.P., et al.*,
    861 F.3d 1182 (10th Cir. 2017) ............................................................................5

*Chieftain Royalty Co. v. Laredo Petro., Inc.*,
    No. CIV-12-1319, 2015 WL 2254606 (W.D. Okla. May 13, 2015) ...................6, 14

*Chieftain Royalty Co. v. XTO Energy, Inc.*,
    No. CIV-11-29-KEW, 2018 WL 2296588 (E.D. Okla. Mar. 27, 2018) ...........5, 8, 9

*Childs v. Unified Life Ins. Co.*,
    No. 2011 WL 6016486 (N.D. Okla. 2011) .............................................................8

*CompSource Oklahoma v. BNY Mellon, N.A.*,
    No. CIV 08-469-KEW, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ............6, 14

*Farrar v. Hobby*,
    506 U.S. 103 (1992)................................................................................................8

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ........................................................................4, 5, 6

*Gudenkauf v. Stauffer Commc'ns, Inc.*,
    158 F.3d 1074 (10th Cir. 1998) ............................................................................7

*Hitch Enterprises, Inc. v. Cimarex Energy Co.*,
    No. CIV-11-13-W (W.D. Okla. Dec. 28, 2012) .....................................................5

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ................................................................................7

*Nieberding v. Barrette Outdoor Living, Inc.*,
    129 F.Supp.3d 1236 (D. Kan. 2015)...................................................4, 7, 10, 13

iii

*Northumberland County Ret. Sys. v. GMX Res. Inc.*,
  No. CIV-11-520, 2014 WL 12014020 (W.D. Okla. July 31, 2014) ......................................6, 8

*Rosenbaum v. MacAllister*,
  64 F.3d 1439 (10th Cir. 1995) ...................................................................................................6

*Schell v. Oxy USA, Inc.*,
  814 F.3d 1107 (10th Cir. 2016) ...............................................................................................14

*Schell v. Oxy USA Inc.*,
  No. 07-1258-JTM, 2013 WL 5876593 (D. Kan. Oct. 31, 2013), aff'd, 808
  F.3d 443 (10th Cir. 2015), withdrawn from bound volume, on reh'g, 814 F.3d
  1107 (10th Cir. 2016)................................................................................................................14

*Uselton v. Commercial Lovelace Motor Freight*,
  9 F.3d 849 (10th Cir. 1993) .......................................................................................................6

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000) ..................................................17

**State Cases**

*Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*,
  No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015)....................12

*Freebird v. Cimarex Energy Co.*,
  264 P.3d 500 (Kan. App. 2011) .................................................................................................5

*Gigot v. Cities Serv. Oil Co.*,
  737 P.2d 18 (Kan. 1987) ............................................................................................................4

**Rules**

Federal Rule of Civil Procedure 23(h)..............................................................................3, 4, 8, 17

**Other Authorities**

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION §
  3.13(b) (2010) ........................................................................................................................6, 9

7B Fed. Prac. & Proc. Civ. § 1803 (3d ed.) .................................................................................6

In support of Class Representative's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Class Representative Jin Nakamura respectfully requests that the Court enter an order directing Defendant Wells Fargo Bank National Association, d/b/a Wells Fargo Dealer Services, Inc. ("Wells Fargo") to pay Class Counsel's attorneys' fees and reimburse its reasonable expenses incurred in connection with the prosecution of this Action as set forth in the Settlement Agreement. Dkt. No. 127-1, ¶VI.A & B.[1] Mr. Nakamura and Class Counsel submit the agreed-upon fee is reasonable considering the Settlement achieved in this action, as is the reimbursement of the reasonable litigation expenses advanced on behalf of the Settlement Class.

## I.      ISSUE PRESENTED

Should the Court approve the parties' agreement for Wells Fargo to pay Class Counsel's attorneys' fees and reimbursement of litigation expenses?

## II.      BACKGROUND FACTS

Mr. Nakamura engaged Class Counsel to prosecute this case on behalf of himself and a putative class of servicemembers on a contingency-fee basis. Mr. Nakamura agreed to a fee of 40% of any recovery obtained for the putative class as a result of judgment or settlement, which would increase to 45% in the event of appeal requiring additional representation. Joint Counsel Decl. ¶21. Pursuant to this agreement, Class Counsel represented Mr. Nakamura and the putative class and, after significant battles, achieved the Settlement under which Wells Fargo has agreed to pay: (1) $5.125 million in extra damages to the Servicemember Class (the "Gross Settlement Fund"); (2) the Class's Attorneys' Fees of up to 33% of the Gross Settlement Fund, i.e.

---

[1]      Contemporaneously with the filing of this motion, Mr. Nakamura also moves the Court for final approval of the Class Action Settlement. Mr. Nakamura files a separate Combined Index of Exhibits that includes the declarations and documents offered in support of both motions.

$1,691,250;[2] (3) reasonable litigation expenses of $78,209.59.[3] Adding up everything that Wells Fargo has agreed to pay equals $6,894,459.59, which is the "Total Recovery" of the Settlement. Not included in the Total Recovery, however, are additional benefits that are not easily quantified: (1) Wells Fargo agreed to pay the Notice and Administrative Costs of the Settlement, in whatever amount required; and, (2) Wells Fargo has agreed to continue fulfilling its obligations under the settlement with the Department of Justice, including, most critically, cleaning up the credit of Class Members adversely affected by the repossessions.[4]

As discussed in the Motion for Final Approval, which is respectfully incorporated herein by reference, the parties agreed that Wells Fargo, separate and apart from the Settlement Amount, would pay Class Counsel's attorneys' fees in an amount not to exceed 33% of the Settlement Amount, and would reimburse Class Counsel for reasonable litigation expenses advanced on behalf of the Settlement Class. Class Counsel respectfully requests the Court enter an order directing Wells Fargo to pay Class Counsel's attorneys' fees in the amount of $1,691,250 and to reimburse its litigation expenses in the amount of $78,209.59. The Joint Declaration of Class Counsel, attached to the Combined Index of Exhibits, supports these requests.

## III.    ARGUMENT AND AUTHORITIES

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P.

---

[2]    Ordinarily the Class would pay its own Attorneys' Fees from the Gross Settlement Fund, thereby reducing the amount distributed to the Class. Wells Fargo's agreement to pay the Class's Attorneys' Fee separate from the Gross Settlement effectively increases the overall recovery to the Class.

[3]    Like Wells Fargo's agreement to pay the Class's Attorneys' Fees, *supra,* Wells Fargo's agreement to pay the Class's Litigation Expenses also increases overall recovery to the Class.

[4]    The timing suggests that Plaintiff's lawsuit and pursuit of discovery may have prompted Wells Fargo's "finding" the additional 450 Servicemembers to whom it paid $5.4 million under the Settlement with the DOJ. But, without further discovery, which would serve no purpose at this point, Plaintiff could not prove the connection definitively.

23(h). Here, the parties' agreement, i.e. the Settlement Agreement, provides express authority for the requested fees and expenses awards. Moreover, the requested fee percentage, 33% of the Settlement Amount, is less than the 40% contingent fee percentage negotiated between plaintiff and the attorneys whom the Court appointed as Class Counsel. *See Nieberding v. Barrette Outdoor Living, Inc.,* 129 F.Supp.3d 1236, 1250 (D. Kan. 2015) (citing *see Gigot v. Cities Serv. Oil Co.,* 737 P.2d 18, 28 (Kan. 1987) ("[C]ourts have traditionally 'awarded fees in the 20%–50% range in class actions.'") (quoting *In re Warner Commc'ns Sec. Litig.,* 618 F.Supp. 735, 749 (S.D.N.Y.1985)).[5]

Both Fed. R. Civ. P. 23(h) and case law establish that the standard for setting the fee award is reasonableness. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988); Fed. R. Civ. P. 23(h) advisory committee's note (2003) (stating that "reasonableness" is the customary measurement for common fund fees). An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who has firsthand knowledge of the efforts of counsel and the services provided. *Brown.*, 838 F.2d at 453. Such an award will only be reversed for abuse of discretion. *Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994); *Brown*, 838 F.2d at 453. The Fee Request here is fair and reasonable under federal law and should be approved.

### 1.  *Attorneys' Fees are Calculated as a Percentage of the Fund under Tenth Circuit Law.*

Normally, and in all cases cited for the Court, the attorneys' fees award is a percentage of the total value of the common fund recovered on behalf of the Settlement Class.[6] In this Circuit,

---

[5]     In this District, plaintiffs have not requested the upper-end of the fee range, and this case is no exception. That was a conscious choice by the Class Representative and by Class Counsel in order to get the case resolved at mediation and present the Court with a smooth settlement process.
[6]     Using the Total Recovery, Class Counsel's request is only 24.5% ($1,691,250/$6,894,459.59). This percentage request is more than reasonable.

and in Kansas state court, the fees are between 33-40%. *Freebird v. Cimarex Energy Co.,* 264 P.3d 500 (Kan. App. 2011) (and cases cited therein); *see also,* Exhibits 1-3, attached to the Joint Counsel Declaration: Declaration of [Former Judge] Layn R. Phillips, *Hitch Enterprises, Inc. v. Cimarex Energy Co.,* No. CIV-11-13-W, at ¶ 19 (W.D. Okla. Dec. 28, 2012) (opining an attorneys' fee in the range of 33 1/3% to 40% along with the value for reimbursement of litigation expenses was reasonable and in line with amounts approved by courts in the Tenth Circuit as being fair and reasonable); Declaration of Geoffrey P. Miller, *Chieftain Royalty Co. v. XTO Energy, Inc.,* No. CIV-11-29-KEW, at ¶57 (E.D. Okla. Feb. 23, 2018) ) ("an attorneys' fee of 40% is in line with awards in both federal and state courts in the Tenth Circuit..."); Declaration of Professor Steven S. Gensler, *Cecil v. BP Am. Prod., Inc.,* No. 16-CV-410-KEW, at ¶ 60 (E.D. Okla. Oct. 16, 2018) ("The 40% fee request in this case is consistent with what many federal and state courts in Oklahoma have awarded...").

In this case, the reasonableness of the fee is tested under federal common law since federal claims were alleged and carry with them federal question jurisdiction.[7] Under the federal-law standards followed in the Tenth Circuit, the preferred method for determining the reasonableness of a fee award in a common fund case is the percentage of recovery method. *See Gottlieb*, 43 F.3d at 483; *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.13(b) (2010) (endorsing the percentage of recovery method for common fund cases).

---

[7]     In *Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XIII-A, L.P., et al.*, 861 F.3d 1182 (10th Cir. 2017), a two-judge panel of the Tenth Circuit held that, in diversity class-action cases, the federal court should look to state law for determining the reasonableness of class counsel's fee award. Unlike *Nieberding* and *Chieftain v. EnerVest,* this case was not a diversity case. So, the Court should use the percentage of the common fund method to determine reasonableness of the fee request, which the Tenth Circuit has used for decades.

"The court's authority for ... attorney fees stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Fed. Prac. & Proc. Civ. § 1803 (3d ed.). Under federal equitable law, the Tenth Circuit expressly prefers the percentage of the fund method in determining the award of attorneys' fees in common-fund cases. *See Gottlieb*, 43 F.3d at 483; *Brown*, 838 F.2d at 454; *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993). This methodology calculates the fee as a reasonable percentage of the value obtained for the benefit of the class. *See Brown*, 838 F.2d at 454. Courts within the Tenth Circuit have acknowledged this preference and rejected application of a lodestar analysis or lodestar cross check. *See, e.g., CompSource Oklahoma v. BNY Mellon, N.A.*, No. CIV 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.") (citing *Union Asset Mgmt. Holding A. G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)). Other federal district courts within the Tenth Circuit agree. *See, e.g., Northumberland County Ret. Sys. v. GMX Res. Inc.*, No. CIV-11-520, 2014 WL 12014020, at *3, n.1 (W.D. Okla. July 31, 2014) ("The Court is not required to conduct a lodestar assessment of the hours versus a reasonable hourly rate."); *see also Chieftain Royalty Co. v. Laredo Petro., Inc.*, No. CIV-12-1319, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("In the Tenth Circuit, the preferred approach for determining attorneys' fees in common fund cases is the percentage of the fund method.").

2.    ***The Fee Request Is Reasonable under the <u>Johnson</u> Factors***.

The Tenth Circuit authorizes a fee award to Class Counsel to recognize the work done on behalf of, and the benefit conferred upon, all Class Members. *See Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980); *see also* STEVEN S. GENSLER, FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY 591 (West 2017 edition). Since 1988, the Tenth Circuit has instructed district courts to analyze the reasonableness of fee awards under the factors developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Brown*, 838 F.2d at 454-55. The *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.*

Because the *Johnson* factors were developed in the context of statutory fee-shifting, the Tenth Circuit held that the scheme should be modified when applied in a common fund case to better fit the setting. *See Brown*, 838 F.2d at 453. Not all factors will apply in every case. *Id.* at 456; *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) (trial courts need not specifically address each factor in every case). And the weight to be given each factor varies when the court is awarding fees from a common fund. *Brown*, 838 F.2d at 456.

The most important difference in the application of the *Johnson* factors in common fund cases is the emphasis placed on the eighth factor—the result obtained by class counsel. In a common fund case, the result obtained is *the* most important factor and deserves the greatest weight. *Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing

recovery on behalf of the class."). As the Advisory Committee later put it when adopting the 2003 amendments to Rule 23, "[f]or a percentage fee approach to fee measurement, results achieved is the basic starting point." FED. R. CIV. P. 23(h) advisory committee's note (2003).

The other important difference in this common-fund context is the diminished role of the first *Johnson* factor—the time and labor involved. In *Brown*, the Tenth Circuit recognized that the differences between common fund cases and statutory fee cases cautioned against importing a formal lodestar requirement—the usual *starting* point in statutory fee-shifting cases—into common fund cases. Accordingly, the Tenth Circuit recast the nature of the "time and labor" inquiry in common fund cases. While "time and labor" is a factor to be considered, the court need not conduct a lodestar analysis to assess it. *Brown*, 838 F.2d at 456 & n.3; *Chieftain Royalty Co. v. XTO Energy, Inc.,* No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); *Childs v. Unified Life Ins. Co.*, No. 2011 WL 6016486, *15 n.10 (N.D. Okla. 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by Plaintiff's Counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor."). Rather, the court may make a general finding regarding the expenditure of time and labor based on the record as a whole. *See, e.g., Northumberland*, 2014 WL 12014020, at *3, n.1.

In the context of this case, the result achieved should be given the greatest weight in determining the reasonableness of the fee request. *Brown*, 838 F.2d at 456; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.") (quotations omitted).

The evolution of the allowed percentage in the Tenth Circuit can be traced to the increasing risk and cost of class actions over time—originally 25% -33 1/3% was the standard. But with the

addition of an appeal under Rule 23(f), lengthy discovery, expert costs, and *Daubert*, the time, risk, and cost of prosecuting class actions has increased significantly. The standard in this Circuit has increased the range to 33 1/3% to 40%, with 40% becoming the norm, as the fee agreement between Mr. Nakamura and Plaintiff's Counsel reflects. But, by its application for fees and the Settlement Agreement, Class Counsel has agreed to limit its request to $1,691,250 in fees. This amounts to less than 25% when calculated as a percentage of the estimated total benefit of almost $6.9 million conferred on the Class Members.

Here, the cash benefit of the Settlement represents a significant, concrete, immediate, monetary benefit to the Settlement Class. There are no claim forms to fill out, no elections to make, and no documentation to scavenge out of old records. Indeed, Class Members do not have to take any action whatsoever to receive their benefits. The only thing Class Members must do is not opt out of the Settlement, in which case the benefits are ***guaranteed*** and automatically bestowed upon on them. Their checks will be distributed to them if the Court grants final approval of the Settlement and the Settlement becomes Final. [Dkt. No. 127-1, I, ¶ 14].

The value conferred by Class Counsel is a valuable part of the overall Class recovery which should be included when determining the size of the recovery obtained for the class. *See Chieftain Royalty Co. v. XTO Energy,* 2018 WL 2296588, at *3 ¶ 6(l) ("it is well-established that the fee award should be based on the total economic benefit bestowed on the class.") (citations omitted); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.13(b) (2010). To be clear, Class Counsel is not asking the Court to award a fee from the Settlement Amount or the extra benefits. Nonetheless, the *existence* of the extra benefit is still relevant to the fee request because it is a part of the Class' Total Recovery and therefore speaks to the overall quality of the result.

The value of the fees and expense on top of the $5.125 million is also value to the Class since those do not have *to* be deducted from the Settlement Amount as is usually the case. Thus, even though Class Counsel is not asking the Court to award a fee on the fees and expenses, it would be proper to do so as part of the total benefit conferred by the Settlement.

Four of the *Johnson* factors examine, in different ways, whether the fee request is consistent with the market for legal representation of this type.[8] This makes sense in that absent Class Members do not have an express, pre-existing attorney-client relationship with Plaintiff's Counsel. In *determining* how much Plaintiff's Counsel should be paid for the work done on absent Class Members' behalf, it is appropriate to consider what clients agree to pay their lawyers when a direct attorney-client relationship exists.

Here, after arm's-length negotiations with Plaintiff's Counsel, Plaintiff agreed Plaintiff's Counsel would represent Plaintiff on a 40% contingency fee basis. At the time this *agreement* was reached, Plaintiff understood a 40% contingency fee was at or below the market rate. The typical fee award in class actions today is around 40%. *See* § 1, *supra.* A fee agreement negotiated at arm's-length in advance is particularly relevant in a contingency case because it reflects the value of the service to be provided before the full difficulty and uncertainty of the case is known and while the risk of a loss still exists. *See Nieberding,* 129 F.Supp.3d at 1250 (percentage in representation agreement between plaintiff and counsel "provides some market context suggesting that a fee award in this range is a reasonable one.")

Another way of comparing the fee request to the market for comparable legal services is to consider awards in similar cases (*Johnson* factor #12). The 40% fee request in this case is

---

[8]     These factors are: (5) the customary fee; (6) whether the fee is fixed or contingent; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

consistent with what many federal courts in this Circuit have awarded in other class actions. *See* § 1, *supra*.

Seven of the *Johnson* factors examine, in different ways, Class Counsel's dedication of time, effort, and skill, and commitment to the case.[9] As noted above, these factors are less important in a common fund case (rather than a fee-shifting case) because the most important determinant of the lawyer's contribution—and therefore the most important factor in setting the fee—is the outcome the lawyer was able to achieve. *See Brown*, 838 F.2d at 456. However, a few of these factors deserve specific attention.

Class Counsel invested significant time and money in this Action with no guarantee of reimbursement or recovery. As experienced class action litigators, Class Counsel knew what needed to be done and what tasks were best calculated to advance the likelihood of certification and to marshal the proof needed to prevail in court or in a favorable settlement. That said, the Court knows as well as anyone the challenges and complexity of cases like this and the risk Class Counsel undertook in representing the Class. What *Brown* instructs the judge to do is to satisfy himself that the time and effort of Class Counsel contributed to the result achieved for the Class Members. *Brown*, 838 F.2d at 456.[10]

---

[9] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (7) any time limitations imposed by the client or the circumstances; (9) the experience, reputation and ability of the attorneys; and (10) the undesirability of the case.

[10]    In *Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.,* No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015), Judge Parsley noted the time-and-labor "factor is the most important in a fee shifting case, its relevance in the contingent fee common fund class actions such as this one is to show that the case was not a lay-down winner where little time was invested and little risk actually assumed."  *Id.* at *6. The percentage method for awarding fees rewards good results, promotes efficiency, and aligns the interests of class counsel with the class members. *Id.*

The other *Johnson* factors also support approval of the fee request. Although these factors do not merit as much weight as the results obtained factor, the Joint Declaration of Class Counsel, incorporated by reference, addresses each of them. To summarize:

1.  **Time and Labor**. This is important in statutory fee shifting lodestar cases, but only important here to show the case was not a lay down winner. The Joint Declaration of Class Counsel shows the law firms invested substantial time and labor in researching, investigating, prosecuting, and resolving this case. Joint Counsel Decl. ¶¶4-16, 25-28, 38.

2.  **Novelty and Difficulty**. Class actions are known to be complex and vigorously contested. The claims involve difficult and highly contested issues and class certification law. Class Counsel litigated such difficult issues against the vigorous opposition of highly skilled defense counsel. Joint Counsel Decl. ¶¶4-16, 39. Moreover, Wells Fargo asserted a number of defenses to the Settlement Class' claims that would have to be overcome if the Action continued to trial. *Id.* at ¶ 45. Despite these hurdles, Class Counsel obtained a significant recovery for the Settlement Class. *Id.* at ¶ 22. Thus, the immediacy and certainty of this recovery, when considered against the very real risks of continuing to a difficult trial and possible appeal, support the Fee Request.

3.  **Skill required.** Only a few firms handle class litigation because of the nuanced intersection of complex procedural class action law and complex substantive law and the expense of funding such a large and potentially long-lasting endeavor. Wells Fargo is represented by skilled class action defense attorneys who could spare no effort or expense in the defense of their client. This Action could have raged for years. Without the experience, skill, and determination displayed by *all* counsel involved,

11

by the mediator in moving the parties toward settlement, and by the Court in actively managing the Action, the Settlement would not have been reached. Joint Counsel Decl. ¶ 40. These factors strongly support the Fee Request.

4. **Preclusion of Other Cases**. Counsel has only a finite number of hours to invest in class action cases and must turn away other opportunities to pursue cases in which they have already accepted representation. Joint Counsel Decl. ¶ 41.

5. **Customary Fee.** Mr. Nakamura and Class Counsel negotiated and agreed to prosecute this case based on a 40% contingent fee. Joint Counsel Decl. at ¶21. This fee represents the market rate and is in the "customary fee". *Id.* at ¶¶ 24, 30-36. This factor supports the Fee Request.

6. **Fixed Hourly or Contingent Fee and Risk of Recovery**. Mr. Nakamura and Class Counsel negotiated a contingent fee agreement, which also supports the fee award. Joint Counsel Decl. ¶ 43. "Class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel." *Nieberding,* 129 F.Supp.3d at 1250 (citing *see Freebird, Inc.,* 2013 WL 1151264, at *4). Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. If Class Counsel lose class certification or the merits, that is thousands of hours and many dollars down the drain. Even winning, class counsel may not get paid at all.[11] Simply put, it would not have been economically prudent or feasible if Class

---

[11]    *See*, *e.g.*, *Schell v. Oxy USA, Inc.,* 814 F.3d 1107, 1112 & 1125-26 (10th Cir. 2016) (despite winning summary judgment in favor of plaintiff class after seven years of litigation, no attorney's fee was awarded). Judge Marten identified this "bizarre result" but felt bound to so rule:

> OXY points out that the plaintiffs succeeded on only their declaratory judgment claim, losing on their breach of contract, lease forfeiture and injunctive relief

Counsel were to pursue the case under any prospect that the Court would award a fee on the basis of normal hourly rates. Joint Counsel Decl. at ¶¶ 30-36, 43. The agreed-upon contingent fee reflects the value of this Action as measured when the risks and uncertainties of litigation still lay ahead. *Id.* at 50; *CompSource*, 2012 WL 6864701, at *8; *Chieftain v. Laredo Petro., Inc.*, 2015 WL 2254606, at *2. Accordingly, this factor strongly supports the Fee Request.

7. **Time Limitations**. This was not a significant factor in this case and should not influence the Court one way or the other. Joint Counsel Decl. ¶44.

8. **Amount in Controversy and Result Obtained**. Amount in controversy was hotly disputed and difficult to determine. Joint Counsel Decl. at ¶45. Thus, the settlement was focused on recovery per class member. *See id*. As detailed above, this is the most significant factor in awarding attorneys' fees in the class action context and strongly

---

claims. But this result stems from the fact that plaintiffs' counsel took proactive legal action. In hindsight, had plaintiffs' counsel waited until the gas became unusable in quality—forcing the class members to convert to alternative energy sources for their homes—damages would be available against OXY for a clear breach of the leases. The plaintiffs' attorneys would have been entitled to a portion of those damages as compensation for their work. **The plaintiffs and their counsel surely made the most prudent and efficient choice by filing at the first sign that a breach of contract was on the horizon. Strangely, this route results in the plaintiffs' attorneys having worked for free.**

The obvious corollary this court's denial of attorneys' fees here is that **any attorney who makes the wise decision to file early in a case such as this—that is, seeking a declaratory judgment before the contract is actually breached—must litigate the case pro bono, with no chance of recovering a portion of damages and no attorneys' fees.** This court follows the current state of the law to that **bizarre result**, but it does so reluctantly.

*Schell v. Oxy USA Inc.,* No. 07-1258-JTM, 2013 WL 5876593, at *4 (D. Kan. Oct. 31, 2013), aff'd, 808 F.3d 443 (10th Cir. 2015), withdrawn from bound volume, on reh'g, 814 F.3d 1107 (10th Cir. 2016), and aff'd, 814 F.3d 1107 (10th Cir. 2016)

13

supports the Fee Request here. Joint Counsel Decl. ¶45. *See also* Dkt. No. 129, Mediator Layn Phillips Decl. at ¶¶ 14-15 (stating that in his opinion the settlement terms in this case are fair, adequate, and reasonable and in the best interests of the Settlement Class).

9.  **Experience, Reputation, and Ability of Counsel**. Class counsel has extensive experience and demonstrated ability. Joint Counsel Decl. ¶¶1-2, 46.

10. **Undesirability**. Most class counsel will not touch a smaller case such as this. Joint Counsel Decl. ¶47. Few law firms would be willing to risk investing the time and expenses necessary to prosecute this Action for multiple years with only an uncertain prospect of recovery. *Id.* Further, Defendants are worthy adversaries that will fight in bitter, adversarial litigation. *Id.* at 46. This factor also supports the Fee Request.

11. **Nature and Length of Professional Relationship with Client.** Although of little relevance in a case where the client does not engage regularly in litigation to warrant a discounted hourly rate, this factor supports the requested fee. Class Counsel met and worked with Mr. Nakamura many times throughout the Class Lawsuit, including before the lawsuit was filed, to prosecute the claims. Joint Counsel Decl. ¶ 48; *see generally,* Nakamura Decl. Mr. Nakamura zealously represented the Class. *Id*. And, Mr. Nakamura supports the Fee Request. *Id.* at ¶ 17.

12. **Awards in Similar Cases**. One-third to forty percent is the usual fee award and supports the Fee Request in this case. *See* #5, *supra*; Joint Counsel Decl. ¶ 45 (few other SCRA class cases to compare to) & ¶ 49.

The analysis of the *Johnson* factors under federal common law strongly demonstrates approval of the Fee Request is warranted.

3.      *The Request for Reimbursement of Litigation Expenses is Reasonable Under Federal Common Law.*

In connection with approval of the Settlement of the Class Lawsuit, and in accord with the Notice to the Class, Class Representative respectfully moves the Court for reimbursement of expenses incurred in successfully prosecuting and resolving this Litigation (the "Expense Request"). *See* McCown Decl. Regarding Notice Mailing and Administration of Settlement ("McCown Decl.") and Exhibit 1 thereto, Class Notice. As described above, Class Counsel has obtained an excellent recovery for the benefit of Class Members, which necessitated incurring expenses that Class Counsel paid. To date, Class Counsel have advanced almost $80,000.00 in prosecuting and resolving this case. Joint Counsel Decl. ¶¶ 51-54. Class Counsel may incur additional expenses between now and the Fairness Hearing on May 15, 2019. Because the Expense Request is fair and reasonable, and for the reasons set forth below, the Expense Request should be granted.

"As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred…in addition to the attorney fee percentage." *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (citing *Blum*, 465 U.S. at 573); FED. R. CIV. P. 23(h) (authorizing the Court to reimburse counsel for "non-taxable costs that are authorized by law."). As set forth above and as set forth in the Notice to the Class, McCown Decl. at Ex. 1 at 5, Mr. Nakamura respectfully requests reimbursement of Litigation Expenses that have been and may be advanced or incurred by Class Counsel in prosecuting and resolving this Class Lawsuit. All of these expenses were reasonably and necessarily incurred and are directly related to the prosecution and resolution of this Class Lawsuit. The costs include routine expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for

experts, mediation, document production and review, which are typical of large, complex class actions such as this. Joint Counsel Decl. ¶¶ 51-54. As such, this request is fair and reasonable and should be approved.

## IV.     CONCLUSION

As provided for in the Settlement Agreement, Class Counsel respectfully requests the Court enter an order directing Wells Fargo to pay Class Counsel's attorneys' fees in the amount of $1,691,250 and to reimburse the litigation expenses in the amount of $78,209.59.

Respectfully submitted,

REX A. SHARP, P.A.

/s/ Rex A. Sharp
Rex A. Sharp KS #12350
Ryan C. Hudson KS #22986
Scott B. Goodger KS #26480
5301 W. 75th Street
Prairie Village, KS  66208
T: 913-901-0505
F: 913-901-0419 Fax
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com

Bryce B. Bell          KS#20866
Mark W. Schmitz        KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com

A. Scott Waddell       KS#20955
Waddell Law Firm LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-914-5365
F: 816-817-8500
scott@aswlawfirm.com
***Settlement Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing was filed using the Court's CM/ECF filing system, which automatically sends notice of filing to all attorneys of record, on April 1, 2019.

*/s/ Rex Sharp*
Rex A. Sharp
