# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JIN NAKAMURA,

            **Plaintiff,**

v.

WELLS FARGO BANK,
NATIONAL ASSOCIATION, d/b/a
WELLS FARGO DEALER
SERVICES, INC.,

            **Defendant.**

Case No. 17-4029-DDC-GEB

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Jin Nakamura's Unopposed Motion for Final Approval of Settlement (Doc. 136). Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Dealer Services, Inc., has agreed to the Settlement in full. The court held a hearing on plaintiff's motion on May 15, 2019. The court has considered the parties' papers, relevant legal authority, the arguments made by the parties in favor of the settlement, and the record in this case. The court grants plaintiff's Motion for Final Approval based on the following findings and factors:

Plaintiff, on behalf of himself and on behalf of the proposed Settlement Class, and Defendant have agreed, subject to court approval, to settle the above-captioned litigation on the terms set forth in the August 25, 2018, Settlement Agreement;

This court has reviewed and considered the Settlement Agreement[1] the parties have entered into, as well as all exhibits to it, the record in this case, the briefs and arguments of

---

[1] The referenced Settlement Agreement is attached as Exhibit 1 to this Memorandum and Order.

counsel, and supporting exhibits;

Plaintiff has moved for an order granting final approval of the Settlement Agreement and final certification of the Settlement Class;

This court finds that the action meets all the prerequisites of Federal Rule of Civil Procedure 23; and

All defined terms contained in this Memorandum and Order have the same meanings as set forth in the Settlement Agreement.

IT THEREFORE IS ORDERED BY THE COURT THAT:

1. The court has personal jurisdiction over the plaintiff and all Class Members and subject matter jurisdiction to approve this Settlement Agreement;

2. Under Rule 23, and solely for purposes of this Settlement, the court certifies the Class, finding that questions of law and fact common to all members of the Settlement Class predominate over questions affecting only individual members, and certification of the Settlement Class for purposes of settlement is superior to other available methods for the fair and efficient resolution of this controversy, satisfying Rule 23(b)(3);

3. The court grants the Motion for Final Approval of the Settlement and fully and finally approves the Settlement Agreement, incorporating into this Order and Final Judgment the Settlement Agreement. All terms used in this Memorandum and Order shall have the same meaning as set forth in the Agreement. The court finds the settlement's terms to be fair, reasonable, and adequate under Rule 23, and directs its consummation under its terms and conditions;

4. The Settlement Agreement and the Final Approval Order and Judgment are binding upon,

and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Releasors;

5. The court finds that the notice given to the Class Members under the Notice Plan: (a) constituted the best notice practicable under the circumstances; (b) constituted notice that was reasonably calculated under the circumstances to apprise Class Members of the pendency of the Action, of their right to object to or exclude themselves from the proposed Settlement as applicable, of their right to appear at the final approval hearing, and of their right to seek relief; (c) constituted reasonable, due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) complies in all respects with the requirements of Rule 23, due process, and all other applicable law;

6. Class Counsel and the named plaintiff have represented the Class Members adequately for purposes of entering into and implementing this Agreement and Settlement, and, under Rule 23, the court makes final appointment of Rex A. Sharp, Ryan C. Hudson, and Scott B. Goodger of Rex A. Sharp, P.A.; Bryce B. Bell and Mark W. Schmitz of Bell Law, LLC; and A. Scott Waddell of Waddell Law Firm, LLC as Class Counsel in this matter;

7. Named plaintiff Jin Nakamura has requested an incentive award in the amount of $76,875. An incentive award would reduce the amount distributed to the other class members by the amount awarded. During the settlement approval hearing, class counsel represented that Mr. Nakamura had devoted about 200 hours to the case in his role as class representative. Counsel also explained that Mr. Nakamura, who is active duty in the

United States Army, had traveled from his duty station in South Korea for the case. The first time, he used personal leave time to return to California to participate in the mediation of the case. The second time, he traveled to Kansas City, Kansas, for the settlement approval hearing. Counsel also informed the court that Mr. Nakamura had: (1) participated in the second mediation session via Skype (participation that required him to stay awake all night because of the time difference between South Korea and California); (2) appeared for a day-long deposition on his final day of personal leave before returning to South Korea; and (3) had refused, pre-certification, an offer to settle his personal claim against defendant because he was unwilling to abandon the rights of his fellow class members.

To support his request for an incentive fee, class counsel's Memorandum argues: "Normally, the incentive award is a percentage of the total common recovery to the Class." Doc. 137 at 17. The court disagrees with this proposition. Our Circuit rejected this approach in *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "The district court granted [the class representative] a ½% incentive award of $260,000. Yet the weight of authority apparently disfavors percentage-based awards." *Id.* (citing Newberg on Class Actions § 17:16 (5th ed. 2016) ("Percentage-based incentive awards are disfavored, if not altogether forbidden.")). The cited passage from the Newberg treatise provides five reasons, but the Circuit identified one of them as the most important: "[S]caling those rewards according to the size of the common fund is at best a rough proxy in that the services and risks are not necessarily directly related to the size of the settlement." *Id.* (quoting Newberg § 17:16). This passage in *Chieftain Royalty* concludes—again quoting Professor Newberg—with this

observation: "If a percentage calculation is to be made at all, it should be made only to 'check a flat award for excessiveness by reference to the percentage of the fund it represents.'" *Id.* at 469. Having rejected the percentage-based approach, *Chieftain Royalty* "examine[d] whether the award to [the class representative] can be justified as payment at a reasonable rate for reasonable time expended on services rendered that were helpful to the litigation and did not duplicate what could be performed less expensively by counsel." *Id.* To evaluate the proposed award for Mr. Nakamura here, the court engages the same analysis.

At the settlement hearing, class counsel represented that Mr. Nakamura had devoted about 200 hours of work to the case. But, no one provided the court with records, much less "detailed contemporaneous records." *Id.* While the estimate here resembles the "approximations and generalities" deemed insufficient in *Chieftain Royalty*, *id.*, class counsel provided several specific examples of Mr. Nakamura's engagement in class representative duties. While this estimate is far from ideal, the court accepts the 200 hours as the basis for the hour-based analysis it must perform.

That determination leaves the next task: choosing a reasonable hourly rate. For starters, the court cannot adopt the rate implied by plaintiff's request: just north of $384 per hour ($76,875 ÷ 200 hours). Nothing in the record supports it, and to employ it would depart dramatically from the rates used and implied by this court's cases. In *Freebird, Inc. v. Merit Energy Co.*, for example, Judge Vratil approved an incentive award of $48,293 for a class representative who had committed 1,500 hours to the case. No. 10-1154-KHV, 2013 WL 1151264, at *5 (D. Kan. Mar. 19, 2013). This translates to about $32 per hour for a class representative who, like Mr. Nakamura here, demonstrated

admirable resolve. Judge Vratil described that class representative's diligence in this fashion: "Due in part to her efforts and persistence in bringing this case, class members now get the benefit of a favorable settlement." *Id.* The same can be said for Mr. Nakamura, who refused an opportunity to settle his own case and abandon the class at an early stage. Had he done so, his fellow class members would have recovered nothing.

Applying the approach recently adopted by the Circuit, the court awards Mr. Nakamura $10,000 for his 200 hours of work as an incentive award. This represents $50 per hour, an increase over the rate used in 2013. Closing this analysis, the court reiterates what it said to Mr. Nakamura directly at the hearing. The court's substantial reduction in his request does not manifest any disrespect for Mr. Nakamura or the service he performed. Instead, it is designed to comply with the approach adopted in *Chieftain Royalty*, a ruling that postdates many of this court's earlier decisions on this issue.[2]

8. The court dismisses with prejudice all claims in this action and, except as otherwise explicitly provided for in the Settlement Agreement, does so without costs awarded to either side;

9. The court discharges and releases the Releasees from all Released Claims and permanently bars and enjoins the institution and prosecution, by Releasors and/or any

---

[2] The court recognizes the *Erie* nuance at play in *Chieftain Royalty*. Because diversity of citizenship had provided that court with subject matter jurisdiction, the Circuit concluded that it must apply state law to evaluate the attorneys' fees and class incentive requests. 888 F.3d at 460, 468 ("We think it clear that, as with the attorney-fee award discussed above, *Erie* requires us to apply Oklahoma law" to the class incentive analysis.). Here, in contrast, federal question jurisdiction confers subject matter jurisdiction on the court. So, one could argue, *Chieftain Royalty* doesn't apply. But, this argument won't withstand careful attention. The Tenth Circuit concluded quickly that Oklahoma law hadn't addressed class incentive awards. *Id.* So, the court turned to "other state court decisions, federal decisions, and the general weight and trend of authority." *Id.* (quoting *Sender v. Simon*, 84 F.3d 1299, 1303 (10th Cir. 1996)). The court's analysis was dominated by federal court decisions. *See* 888 F.3d at 468–70 (citing four cases, all by federal courts). And, it relied on § 17:16 of the Newberg treatise. With one exception, that section of the treatise relies exclusively on federal court decisions. The court predicts that the Circuit would apply the principles in *Chieftain Royalty* equally to federal question cases, and thus the court applies them here.

other Person not otherwise excluded, of any and all of the Released Claims;

10. The court determines that the Settlement Agreement and any proceedings taken pursuant to it are not and should not in any event be offered or received as evidence of a presumption, concession, acknowledgment, or an admission of liability or of any wrongdoing by defendant or any Releasee or of the suitability of these or similar claims to class treatment for litigation, trial, or any other purpose except settlement; provided, however, that reference may be made to this Agreement and the settlement in such proceedings as may be necessary to effectuate the Agreement;

11. The court, to the extent permitted by law, reserves continuing and exclusive jurisdiction over the Settlement, including all future proceedings, if any, concerning the administration, consummation, and enforcement of this Agreement;

12. The court authorizes the Settling Parties, without further approval from the court, to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement as shall be consistent in all material respects with this Order and Judgment and not limit the rights of the Settling Parties or Class Members; and containing such other and further provisions consistent with the terms of the Settlement Agreement to which the Settling Parties expressly consent in writing.

**IT IS SO ORDERED.**

**Dated this 21st day of May, 2019, at Kansas City, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**